Geneva JORDAN and Lynn Jordan, Individually and as Next Friend of Shelamiah D. Jordan, Appellants (Plaintiffs Below),

v.

Michael DEERY, M.D., Warren Reiss, M.D., Lake Shore Clinic, Kiem Houser, M.D., Holy Cross Hospital, and Doctors John Doe and John Roe, Appellees (Defendants Below).

No. 75S04–9303–CV–314.

Supreme Court of Indiana.

March 9, 1993.

Bessie M. Taylor, Gary, for appellants.

Mark A. Lienhoop, Leon R. Kaminski, Newby Lewis Kaminski & Jones, La Porte, for appellees Deery, Reiss and Lake Shore Clinic.

Robert J. Palmer, Maggie Mawby Chipman, D. Andrew Spalding, May, Oberfell & Lorber, South Bend, for appellee Holy Cross Parkview Hosp.

KRAHULIK, Justice.

Geneva Jordan and Lynn Jordan, individually and as next friends of Shelamiah D. Jordan (Appellants–Plaintiffs below) seek transfer after the Court of Appeals affirmed, in a memorandum decision, the trial court's grant of summary judgment in favor of Michael Deery, M.D., Warren Reiss, M.D., Lake Shore Clinic, Kiem Houser, M.D., and Holy Cross Hospital (Defendants–Appellees below) in this medical malpractice action. *Jordan v. Deery* (1992), Ind.App., 590 N.E.2d 669 (Chezem, J., with Shields, J., concurring and Miller, J., concurring in part and dissenting in part, with opinion).

The facts relevant to this petition are as follows. Shelamiah Jordan was born on

December 10, 1986, to Geneva and Lynn Jordan, her parents. On December 3, 1988, the Jordans filed a proposed complaint for medical malpractice with the Insurance Commissioner alleging that the defendants' negligence resulted in personal injuries to mother and daughter in the course of labor and delivery. The complaint also alleged loss of consortium and companionship on behalf of the father. The opinion of the panel, in favor of all defendants, was issued on May 4, 1990, and received by the Jordan's counsel on May 7, 1990. On September 12, 1990, the Jordans filed suit in state court.

Defendants moved for summary judgment on the grounds that (1) the complaint was barred by the statute of limitations, and (2) plaintiffs had presented no evidence from a medical expert creating any issue of fact. The Jordans filed a brief in opposition to the motions for summary judgment to which was attached an affidavit of Deborah McCullough, M.D., purporting to supply an expert opinion that the defendants had breached the standard of care. After defendants filed objections to this affidavit, the Jordans filed a second affidavit on January 4, 1991, the date of the hearing on the motions for summary judgment. Defendants objected to the second affidavit on the grounds that it was untimely and substantively insufficient. At the close of the hearing, the trial court took the motions under advisement. Five days later, plaintiff filed what was denominated as an "Amended Affidavit" from Dr. McCullough. Defendants filed objections to this third affidavit on the same grounds as the second.

On January 22, 1991, the trial court granted defendants' motions for summary judgment. With regard to the statute of limitations, the trial court relied on *Ind. Code* § 16–9.5–9–1(b), and held that because the Jordans had invoked the jurisdiction of the medical review panel by filing a proposed complaint, they had only ninety days after receipt of the panel opinion in which to file suit in state court. The trial court also held that the affidavits were not sufficient to create a question of fact. The court found that even the third affidavit, which could be described as the most comprehensive one filed, was insufficient because it contained no discernible facts upon which Dr. McCullough based her opinions, it did not indicate with any particularity what Dr. McCullough had reviewed in reaching her opinions, and it did not contain any indication that the evidence upon which Dr. McCullough relied was admissible evidence. The trial court concluded that the affidavit contained "so many flaws that it should be held insufficient in its totality."

The Jordans appealed on several grounds which are summarized as follows: (1) that the decision of the medical review panel was not properly before the trial court, (2) that their claims were not barred by the statute of limitations, and (3) that the affidavits were sufficient to establish an issue of fact. A unanimous panel of the Court of Appeals held that the medical review panel decision was properly before the trial court. A majority of the Court of Appeals affirmed the trial court's holding as to the statute of limitations. On this issue, the majority held that suit had to be commenced in state court within the ninety-day period following receipt of the panel decision, as provided in *Ind. Code* § 16–9.5–9–1(b). Judge Miller dissented on the ground that the statute allows a claimant an additional ninety days to file a malpractice action after issuance of the panel decision where the statute of limitations expired during the pendency of the panel's review, but does not cut short a limitation period which has not yet expired.

A majority of the panel also agreed that the trial court had properly granted summary judgment because Dr. McCullough's affidavits were legally insufficient as expert opinion, and the second and third were filed late. Judge Miller dissented on the grounds that the affidavits were not so flawed as to be insufficient under *Kopec v. Memorial Hosp. of South Bend* (1990), Ind.App., 557 N.E.2d 1367, and that even if they were filed late, the trial court exercised its discretion and considered them.

## I. *Standard of Review*

This case was resolved in the trial court by summary judgment. Summary judgment is appropriate only if the pleadings and evidence sanctioned by Indiana Trial Rule 56(C) show "there is no genuine issue as to any material fact and ... the moving party is entitled to summary judgment as a matter of law." Once the movant shows entitlement to summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." T.R. 56(E). Rational assertions of fact and reasonable inferences therefrom are deemed to be true. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994–95. Summary judgments, like all trial court judgments, are clothed with the presumption of validity. *Dept. of Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313. The reviewing court faces the same issues that were before the trial court and follows the same process. *Id.* The party appealing from the grant of summary judgment has the burden of persuading the appellate tribunal that the grant of summary judgment was erroneous. *Id.* The trial court's determination is then "carefully scrutinized to assure that the non-prevailing party is not improperly prevented from having his day in court." *Id.*

## II. *The Child's Claim Was Timely Filed*

■ We agree with the Jordans that issuance of a medical review panel decision does not shorten the time a plaintiff would otherwise have in which to file a complaint in state court. The statute of limitations for actions brought under the Medical Malpractice Act, found in *Ind. Code* § 16–9.5–3–1(a)[1], is an occurrence statute which begins to run on the date of the alleged malpractice. *Havens v. Ritchey* (1991), Ind., 582 N.E.2d 792, 794. The statute provides that minors under the age of six

years old at the time of the occurrence have until their eighth birthday in which to file actions. Thus, under this statute, Shelamiah's limitation period runs until December 10, 1994.

■ Defendants argue that *Ind. Code* § 16–9.5–9–1(b)[2] cuts short Shelamiah's limitation period to the ninety days following receipt of the panel decision. Defendants rely on *Johnson v. St. Vincent Hosp.* (1980), Ind., 404 N.E.2d 585, 603–4, in which this Court recognized that the legislative intent behind the use of an "occurrence" limitation period was to shorten the time in which patients could sue health care providers. Waiving the banner of legislative intent, defendants invite us to shorten the limitation period in any manner possible. We decline. The clear meaning of the limitation period found in Chapter 3–1(a) is that a child under six years of age at the time of the occurrence has until her eighth birthday to file a claim. Chapter 9–1(b) operates to toll the applicable statute of limitations, not to shorten it. The word "toll" means "to suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority period." *Black's Law Dictionary,* 1488 (1990 6th ed.). Therefore, the running of a limitation period is suspended for the period of time from the date of filing the proposed complaint until ninety days following receipt of the panel opinion.

Defendants assert that allowing Shelamiah to wait longer than ninety days after issuance of the panel opinion would be contrary to the policy of the prompt presentation of claims as discussed in *Johnson.* We do not agree. In fact, because the proposed complaint was filed early, the policy of prompt presentation of claims has been fulfilled. Both sides are aware that

---

**1.** The text of the statute reads as follows: "No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or that should have been rendered unless filed within two (2) years from the date of the alleged act, omission, or neglect, except that a minor under the full age of six (6) years shall have until his eighth birthday in which to file. This section applies to all persons regardless of

minority or other legal disability, except as provided in subsection (b)."

**2.** The statute reads as follows: "The filing of a proposed complaint tolls the applicable statute of limitations to and including a period of ninety (90) days following the receipt of the opinion of the medical review panel by the claimant."

litigation is possible and have had the opportunity to investigate the claim. The law did not compel Shelamiah to file her proposed complaint at this early date. We find nothing in *Ind. Code* § 16–9.5–9–1(b) convincing us that the time otherwise allotted to her should be cut short. In Shelamiah's case, the limitation period began to run on December 10, 1986, the day she was born, at which time *Ind. Code* § 16–9.5–3–1(a) provided her with eight years in which to file her claim. Under *Ind. Code* § 16–9.5–9–1(b), the limitation period stopped running for a period of some twenty months beginning on December 3, 1988, the day her proposed complaint was filed, and ending ninety days after receipt of the panel decision on May 7, 1990. Because the running of her limitation period was tolled by Section 9–1(b), her limitation period will not expire until approximately twenty months after her eighth birthday. Because that date has not yet arrived, her claim was timely filed.

With regard to the individual claims of Mr. and Mrs. Jordan, however, we reach a different conclusion. Their limitation period began to run on December 10, 1986, and, but for the tolling provision, would have expired on December 10, 1988. At the time their proposed complaint was filed on December 3, 1988, seven days remained on their limitation period. Like Shelamiah's, their limitation period stopped running from the time their proposed complaint was filed until ninety days after receipt of the panel decision on May 7, 1990. When the limitation period began running again in August, 1990, seven days of their two-year limitation period remained. Their complaint was not filed, however, until September 12, 1990, more than seven days later. Therefore, their claims were filed late. The trial court correctly granted summary judgment in favor of the defendants on the claims of Mr. and Mrs. Jordan.

### III. *Panel Opinion was Properly Considered*

■ The Jordans contend that the panel opinion should not have been considered by

the trial court in ruling on the motions for summary judgment. First, the Jordans contend that the decision was hearsay because no one with actual knowledge of the proceedings signed the affidavits verifying the authenticity of the decision. The record does not disclose that the Jordans presented this argument to the trial court and, therefore, as the Court of Appeals held, the issue has been waived. *Franklin Bank & Trust Co. v. Mithoefer* (1990), Ind., 563 N.E.2d 551, 553. The Jordans have not presented any evidence that the panel decision considered by the trial court was not, in fact, a true and correct copy of the original. Affidavits from the appointed chairman of the panel and from defense counsel were submitted declaring that the opinion was a true and correct copy of the original. This is sufficient. *Winbush v. Memorial Health System, Inc.* (1991), Ind., 581 N.E.2d 1239, 1243.

■ Second, the Jordans contend that the panel opinion is invalid because the decision was signed by Robert D. Lee "substituting as panel chairman for James F. Groves."[3] The Jordans assert that this procedure violated *Ind. Code* § 16–9.5–9–3(c). That statute along with *Ind. Code* § 16–9.5–9–4 and *Ind. Code* § 16–9.5–9–10 prescribe the duties of the chairman. Those statutes provide that the chairman, an attorney, acts in an advisory capacity. The chairman coordinates the selection of the other panel members, convenes the panel and coordinates the review process. The chairman advises the panel on legal questions, but not on medical questions. The chairman is responsible for preparing the opinion of the panel and submitting a copy of the opinion to the medical members as prescribed by statute. As the Court of Appeals concluded, the Jordans have not established that Groves failed to complete the duties of the panel chairman. Even if he did not prepare the opinion itself, the opinion complied with statutory requirements and the Jordans have not shown how

---

**3.** Robert D. Lee practices with James F. Groves under the name "Hardig, Lee & Groves, Professional Association, Attorneys and Counselors."

they were prejudiced by the substitution. *FMC Corp. v. Brown* (1990), Ind., 551 N.E.2d 444, 447. The trial court properly considered the opinion of the medical review panel.

## IV. *Jordan's Affidavits Were Sufficient To Raise A Question of Fact Precluding Summary Judgment*

The Jordans argue that Dr. McCullough's affidavits were sufficient to create a material issue of fact. In response, defendants assert several reasons why the affidavits were inadequate. We hold that the third affidavit was sufficient to show the existence of a material fact and, therefore, we address the various arguments only as they are directed to the third affidavit.

Initially, defendants argue that the Jordans have waived certain arguments presented in their petition to transfer by not including them in their petition for rehearing. However, from our review of the record, it appears that the Jordans did present these arguments. Moreover, defendants have responded on the merits to the arguments, and the Court of Appeals considered the arguments in its memorandum decision. As in *White v. State* (1986), Ind., 497 N.E.2d 893, 894, the purpose of Appellate Rule 11 has been served and, therefore, we address the merits of whether the affidavit was (1) timely filed, (2) properly verified, and (3) substantively sufficient to create a question of fact.

*Timeliness.*

■ At the time pertinent to this petition, Indiana Trial Rule 56(C) required that affidavits be filed "prior to the hearing" on the motion for summary judgment.[4] Nevertheless, it was within the discretion of the trial court to accept an affidavit filed later than the date specified in the rule. T.R. 56(E); *Winbush*, 581 N.E.2d at 1243. As Judge Miller correctly pointed out in his dissent below, the judgment order reveals that the trial court did not reject the third affidavit because it was filed late, but rather, rejected it because it had "so many

flaws that it should be held insufficient in its totality." Although the trial court could have stricken the affidavit as untimely, it did not do so. Therefore, we examine the substantive content.

*Verification.*

■ Defendants argue that the third affidavit is inadequate because it was not properly verified. Unlike the first two affidavits, the third did contain a notary jurat which read, "Subscribed and sworn before me this 2nd day of January, 1991. /s/ Bessie Taylor." The jurat is a certificate of the due administration of the oath, the purpose of which is to evidence the fact that the affidavit has been duly sworn to before an officer authorized to administer an oath. *Craig v. State* (1953), 232 Ind. 293, 295, 112 N.E.2d 296, 297. In addition, the affidavit stated that: "Affiant, Deborah McCullough being duly sworn upon her oath alleges and says: ...." Defendants argue that this verification was not in compliance with Trial Rule 11(B).

■ The essence of defendants' argument is that, although Dr. McCullough swore to the fact that she made the statements contained in the affidavit, she did not swear that the statements made were true. In support of their position, defendants point to *Indiana Civil Rights Com'n. v. City of Muncie* (1984), Ind.App., 459 N.E.2d 411, where plaintiffs petitioned for the introduction of newly-discovered evidence by way of a verified motion. The Court of Appeals concluded that the verified motion did not comply with Trial Rule 11(B) because, although the petitioner swore that they made certain statements, they did not swear that the statements made were true. *Id.* at 415. In reaching that conclusion, the *Muncie* court relied on *Hodges v. Kosciusko Circuit Court* (1980), Ind., 402 N.E.2d 1231. At issue in *Hodges*, however, was a statutory provision which specified the manner in which a recount petition was to be "verified". This Court held that the petition must "conform in all respects to the jurisdictional section of the

4. Trial Rule 56(C) has since been amended. Presently, it provides that affidavits must be

filed within thirty days after service of the motion for summary judgment.

contest statute" because in Indiana a procedure which is purely statutory, such as a recount petition, must be strictly followed. *Id.* at 1233. Because the words of the verification did not strictly conform to the statutory requirements, this Court held the verification insufficient. *Hodges* is distinguishable from the instant case because there is no singular statutory rule regarding proper verification of an affidavit filed in connection with summary judgment proceedings. Although Trial Rule 11 provides one method for binding an affiant to his oath, compliance with its provisions is not required. Trial Rule 56 permits the trial court to rely on "affidavits" filed in connection with a summary judgment proceeding. An affidavit has been defined as a written statement of fact which is sworn to as the truth before an authorized officer. *Dawson v. Beasley* (1962), 242 Ind. 536, 542, 180 N.E.2d 367, 370. The chief test of the sufficiency of an affidavit is its ability to serve as a predicate for a perjury prosecution. *Wallace v. State* (1927), 199 Ind. 317, 326, 157 N.E. 657, 661. We hold that the third affidavit is sufficient to subject Dr. McCullough to prosecution for making a false affidavit and, therefore, constitutes an affidavit.

### *The Third Affidavit was Substantively Sufficient*

■ Finally, the Jordans urge that the trial court erred in ruling that the third affidavit was substantively insufficient to create a question of fact necessary to defeat the summary judgment motions. Defendants counter that the affidavit was insufficient for several reasons. Citing *Ellis v. Smith* (1988), Ind.App., 528 N.E.2d 826, defendants argue that the affidavit fails to show Dr. McCullough was familiar with the standard of care at hospitals in communities like South Bend and Plymouth and, therefore, she was incompetent to offer an expert opinion. We do not agree. The affidavit, along with a copy of her curriculum vitae which was attached to it, indicates Dr. McCullough attended medical school in Indiana, was licensed to practice medicine in Indiana, and currently practices in Gary. In addition, she stated that she was familiar with the standard of care at hospitals in South Bend and Plymouth. Such a bare assertion is adequate for summary judgment purposes. *Yang v. Stafford* (1987), Ind.App., 515 N.E.2d 1157, 1162.

Next, defendants assert that Dr. McCullough impermissibly based her opinions on Shelamiah's medical records from the defendant hospitals. To support their claim, defendants rely on *In re Paternity of K.G.* (1989), Ind., 545 N.E.2d 564, adopting the opinion at Ind.App., 536 N.E.2d 1033, 1035. Defendants argue that she is not competent to offer expert testimony because nothing in the evidence establishes that (1) Dr. McCullough had sufficient expertise to evaluate the reliability and accuracy of the medical records, (2) the records are of a type normally found reliable, and (3) the records are of a type customarily relied upon by medical experts. We do not agree. First, the three-step test contained in *K.G.* was applied to testimony offered at trial, and we continue to agree that it was correctly decided. This case, however, involves expert opinion in the context of summary judgment proceedings. Dr. McCullough's affidavit recites that she reviewed the medical records pertaining to the prenatal care, labor and delivery provided on December 9 and 10, 1986. Obviously, these are the records from the defendant hospital. Indiana courts have long recognized that such records are of the kind normally relied upon by physicians in forming expert opinions. *See e.g. Wilber v. State* (1984), Ind., 460 N.E.2d 142, 143 (testimony reflecting content of medical records not in evidence was admissible in conjunction with establishing basis for expert's medical conclusions).

Defendants next argue that before Dr. McCullough is competent to express the opinion that defendants breached the standard of care, she must first describe that standard. Defendants' argument is the same one presented in *Kopec v. Memorial Hosp. of South Bend*, 557 N.E.2d 1367. The *Kopec* defendants contended that the opinion of the expert expressed in an affidavit was inadequate because it stated con-

clusions rather than facts. In rejecting that claim, the Court of Appeals stated:

> While the affidavit certainly lacks desirable richness from its failure to recite more factual data, that is not the controlling question. It is expert medical opinion concerning breach of duty and causation that plaintiff must possess to demonstrate the existence of an issue for trial. Such an opinion, albeit a conclusion, is admissible in evidence when a proper foundation has been laid. In other words, we are here dealing with an instance in terms of T.R. 56 where conclusions may properly be testified to at trial.

\*　　\*　　\*　　\*　　\*　　\*

> Of course, these opinions would be greatly enhanced by detailing the factual circumstances upon which they were based. Numerous cases, however, have treated such detailing as affecting the weight and credibility to be given the opinion rather than its admissibility.

557 N.E.2d at 1369 (citations omitted).

Dr. McCullough's third affidavit is similar to the one at issue in *Kopec.* The affidavit established Dr. McCullough's credentials as a medical expert and recited that she had reviewed the medical records pertaining to the labor and delivery. The affidavit set forth her conclusion that the defendants violated the standard of care in their treatment of the child and that such treatment caused the complained-of injuries. Although not informative in any way as to the nature of the deviation, the lack of detail in the affidavit goes to the weight and credibility to be assigned to it, not to whether it is adequate to create a question of fact. *See Martin v. Roberts* (1984), Ind., 464 N.E.2d 896, 899 (expert witness's specific knowledge is neither determinative of the witness's qualifications as an expert nor of the admission of his opinion into evidence); *Dahlberg v. Ogle* (1978), 268 Ind. 30, 37, 373 N.E.2d 159, 163 (failure of hypothetical question to contain all material facts not fatal; such omission affects weight not admissibility). A more prudent drafter would have prepared a more detailed affidavit because, among other things, such a practice would have eliminated the waste of time and expense involved in this appeal. Nonetheless, we reluctantly conclude that under the facts of this case, the affidavit succeeds in demonstrating the existence of a material fact and, therefore, summary judgment was inappropriately entered on Shelamiah's claim.

### Conclusion

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court as to the claim of Shelamiah Jordan, affirm the trial court as to the claims of Geneva Jordan and Lynn Jordan, and remand this matter for further proceedings.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.