Caroline V. JONES and Cody Jones, Appellants–Plaintiffs,

v.

Linus MINICK, M.D., Appellee–Defendant.

No. 02A04–9801–CV–12.

Court of Appeals of Indiana.

July 27, 1998.

Mary Beth Ramey, Ramey & Hailey, Indianapolis, for Appellants–Plaintiffs.

Milford M. Miller, Larry L. Barnard, Calvert S. Miller, Miller Carson Boxberger & Murphy, Fort Wayne, for Appellee–Defendant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Caroline and Cody Jones (collectively "the Joneses") appeal from the grant of summary judgment in favor of Defendant–Appellee Linus Minick, M.D. ("Dr. Minick") following the Joneses' complaint alleging medical malpractice.

We reverse.

### ISSUE

One issue is dispositive of this appeal: Whether the Joneses presented evidence sufficient to rebut the opinion of the medical review panel and thus to overcome summary judgment.

### FACTS AND PROCEDURAL HISTORY

During the time pertinent to this case, Dr. Minick maintained a medical practice in Churubusco, Indiana, where he specialized in general family practice. As an area physician, he enjoyed full staff privileges at Parkview Memorial Hospital in Fort Wayne, Indiana. Caroline Jones was a patient of Dr. Minick's since childhood. Therefore, when Caroline discovered that she was pregnant with her third child in February of 1993, she went to Dr. Minick for obstetric care. Her pregnancy was uneventful, and her estimated due date was October 3, 1993.

Around the time of her due date, Caroline began experiencing pain in her ribs. Although Caroline was not in labor, Dr. Minick instructed her to check herself into Parkview Memorial. Caroline thought that she was going to undergo tests for her rib pain, but Dr. Minick informed her that they were going to induce labor and deliver the baby.

Ultimately, the baby was delivered safely, and Caroline's condition was stable post-partum. The evidence is conflicting as to the exact sequence of events during the labor, delivery and repair of Caroline's episiotomy. The Hospital and staff's version of the events in the delivery room is strikingly different from the Joneses' version. The nurses attending the delivery and the physician that relieved Dr. Minick testified by affidavit that the delivery was relatively uneventful and that Dr. Minick appeared well in control of the situation until it was time to repair Caroline's episiotomy. When the L.P.N. assisting Dr. Minick attempted to hand him the needle, Dr. Minick sat "frozen" and was not responsive. During this time, the R.N. attending the delivery was with the baby, and she heard Cody Jones say that the situation was "bull shit" and run from the room. Also, Caroline's sister, who was attending the delivery, said that the nurses had better get someone in there, or they would all be sued. At that point, the nurses called for assistance. Within seconds, the charge nurse arrived and called for a physician to assist.

Dr. Kathryn Einhaus was across the hall and came immediately to assess the situation. Upon entering the room, she observed that the baby and Caroline were doing fine, so she helped a resident get Dr. Minick onto a gurney. Dr. Minick was taken to the emer-

gency room with what appeared to be a stroke, and Dr. Einhaus proceeded to repair Caroline's episiotomy. Dr. Einhaus testified that the blood was minimal and that the repair was fairly routine. In fact, she testified that she was shocked that Dr. Minick, while having a stroke, had managed to cut a straight episiotomy. Dr. Einhaus also examined Caroline prior to her departure from the hospital. She observed nothing remarkable although she did state that Caroline was extremely distressed over the situation. Dr. Einhaus apologized but assured Caroline that she and the baby were just fine despite the problems encountered by Dr. Minick.

The Joneses' version of the facts is completely different. The Joneses contend that they observed before the delivery that Dr. Minick was not acting right. Dr. Minick could not get his gloves on without assistance, and he never said a word during the entire delivery. Dr. Minick performed Caroline's episiotomy without anesthetic and scraped Caroline's uterus. Caroline began screaming, and a nurse stuffed a towel in her mouth. When Dr. Minick began smearing his face with Caroline's blood, rocking back and forth, and staring at his blood-stained hands, Caroline's husband ran out of the room to get help. The events as reported by the Joneses were not recorded in the nurses' notes.

It is undisputed that Dr. Minick suffered a massive stroke· in October of 1993, from which he never recovered. He is now deceased. The record reveals that Caroline did not progress well post-partum. She consulted several physicians regarding lacerations to her genitals, pelvic pain, excessive bleeding, sexual dysfunction, depression and post-traumatic stress disorder. Caroline's husband was also treated for depression and post-traumatic stress disorder.

In December of 1994, the Joneses filed their proposed complaint with the Indiana Department of Insurance against Dr. Minick and Parkview Memorial Hospital.[1] The Joneses alleged that the named health care providers rendered health care services in a negligent manner thereby causing Caroline to suffer severe personal injury. Pursuant to

Indiana Code 27–12–10–1 *et seq.*, a Medical Review Panel was formed and the case was submitted to them. The Panel issued its written opinion on June 3, 1996, as follows:

It is the unanimous opinion of this medical review panel that the evidence does not support the conclusion that the Defendants failed to meet the applicable standard of care as charged in the Complaint.

(R. 24). In September of 1996, the Joneses filed their complaint in the Allen County Circuit Court alleging that as a proximate cause of Dr. Minick's negligence, Caroline suffered physical and emotional injury. It was also alleged in the complaint that as a direct and proximate cause of Dr. Minick's negligence, Caroline's husband suffered emotional injury and loss of society, companionship and consortium.

Several weeks later, Dr. Minick filed a motion for summary judgment wherein he asserted that there was no genuine issue of material fact because the Joneses had failed to meet their burden of presenting expert medical testimony contrary to the findings of the Medical Review Panel. The Joneses filed their response to Dr. Minick's motion for summary judgment along with an opposing affidavit and designation of evidence. The Joneses' opposing affiant, Dr. David Sand, opined that Dr. Minick's care and treatment of Caroline fell below the acceptable standard of care.

The Defendants moved to strike the affidavit on the grounds that it failed to set forth the applicable standard of care. The Joneses filed their response, and the court heard argument on the motion to strike and motion for summary judgment. After taking the motions under advisement, the court denied the Defendants' motion to strike and granted summary judgment in favor of the Defendants. The Joneses appeal from this ruling.

## DISCUSSION AND DECISION

### Standard of Review

■ When reviewing the trial court's ruling on a motion for summary judgment, we apply the same standard as the trial court.

---

1. Parkview Memorial was voluntarily dismissed from this lawsuit.

*Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1065 (Ind.Ct.App.1995), *trans. denied.* In other words, we resolve any doubts as to any fact, or inference to be drawn therefrom, in favor of the non-moving party. *Id.* Summary judgment is appropriate only if the designated evidentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Wolf v. Boren,* 685 N.E.2d 86, 87 (Ind.Ct.App.1997), *trans. denied.* The party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Luider v. Skaggs,* 693 N.E.2d 593, 595 (Ind.Ct.App. 1998). Once the movant meets these two requirements, the burden shifts to the non-moving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.* On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Government, Inc.,* 683 N.E.2d 622, 625 (Ind.Ct.App.1997), *reh'g denied, trans. denied.* A fact is material for the purpose of ruling on a motion for summary judgment only when its existence facilitates resolution of any of the issues involved. *Havert v. Caldwell,* 452 N.E.2d 154, 157 (Ind. 1983). A medical malpractice case based upon negligence is rarely an appropriate case for disposal by summary judgment. *Hoskins v. Sharp,* 629 N.E.2d 1271, 1277 (Ind.Ct.App. 1994), *reh'g denied.* This is especially true when the critical question for resolution is whether the defendant exercised the degree of care due under the factual circumstances. *Id.*

### Summary Judgment

The dispositive issue presented for review is whether the Joneses came forward with sufficient expert medical evidence to create a question of fact as to whether Dr. Minick breached the appropriate standard of care. In their motion to strike, the Defendants argued that Dr. Sand's affidavit should be stricken because it failed to set forth the applicable standard of review. Specifically,

the Defendants stated that nothing in Dr. Sand's affidavit indicated his familiarity with the standard of care for family practice physicians who perform obstetric procedures. Furthermore, the Defendants argued that Dr. Sand did not articulate the applicable standard of care in his affidavit. Because the affidavit is inadequate, the Defendants argued that it was insufficient to preclude summary judgment in their favor.

The trial court found that the affidavit contained admissible evidence and therefore denied the Defendants' motion to strike. However, the court granted summary judgment in favor of the Defendants finding that the affidavit failed to present genuine issues of material fact precluding summary judgment.

In a medical malpractice case, an opposing affidavit submitted to establish an issue of fact on the standard of care issue must demonstrate the expert's familiarity with the applicable standard of care, set out that standard of care and state that the treatment in question fell below that standard. *Hoskins,* 629 N.E.2d at 1278. Facts presented by affidavit for T.R. 56 purposes need not be sufficient to support a verdict, but need only be admissible in evidence. *Randolph County Hosp. v. Livingston,* 650 N.E.2d 1215, 1219 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* An affidavit which establishes an expert's credentials, states that the expert has reviewed the relevant medical records, and sets forth the expert's conclusion that the defendants violated the standard of care in their treatment, which in turn caused the complained of injury, is sufficient to demonstrate the existence of a material fact, thus making summary judgment inappropriate. *Id.*

In *Randolph County Hosp.,* the plaintiff offered expert affidavit testimony in opposition to summary judgment. Specifically, the affidavit along with the affiant's curriculum vitae indicated as follows: the affiant attended medical school in Indiana; the affiant was licensed to practice medicine in Indiana; the affiant practiced medicine in Indiana; the affiant was familiar with the standard of care of physicians engaged in abdominal surgery

in Randolph County; the affiant reviewed the relevant medical records and was of the opinion that the care rendered to the plaintiff decedent fell below the applicable standard of care and was the cause of the decedent's death. *Id.* In discussing whether the affiant physician's bare assertion that he was familiar with the standard of care of physicians engaged in abdominal surgery in Randolph County was adequate for summary judgment purposes, we said that "the lack of detail in the affidavit goes to the weight and credibility to be assigned to [the affidavit], not to whether it is adequate to create a question of fact." *Id. (citing Jordan v. Deery,* 609 N.E.2d 1104, 1111 (Ind.1993) (holding that the bare assertion of the affiant that he is familiar with the applicable standard of care is adequate for summary judgment purposes)); *accord Vogler v. Dominguez,* 624 N.E.2d 56, 60 (Ind.Ct.App.1993), *reh'g denied, trans. denied.*

■ While Dr. Minick is correct in his assertion that it is not enough for the plaintiff's expert to state that he or she would have treated the patient differently, Dr. Sand's affidavit went beyond a mere assertion that he would have treated Caroline differently. Dr. Sand's affidavit provided that he had been licensed to practice medicine in Indiana since 1982, that he specialized in general family practice, and that he was a member of the active staff at Parkview Memorial Hospital in Fort Wayne. His affidavit further provided that he personally examined Caroline and the site of her episiotomy performed by Dr. Minick ten days post-partum. Dr. Sand rendered his professional opinion as follows:

2. The majority in *Oelling* held that the designated affidavit opposing summary judgment was insufficient to raise a material issue of fact as to whether the defendant's conduct fell below that which was reasonable under the circumstances. The affidavit provided as follows:

It is my opinion that the cardiac catheterization performed on Howard A. Oelling by Dr. Satya Rao on 12/16/86 at St. Catherine's Hospital was not indicated and unnecessary ... [W]hen the stress thallium study revealed ischemia only in the distribution of the previously occluded right coronary artery with none in the distribution of the left coronary system, there was no need to perform cardiac catheri-

Based upon my review of the medical chart which I have maintained on Caroline Jones, my clinical examination of Caroline Jones, and my professional background, education, training, and experience it is my professional opinion that Linnus Minnick, (sic) M.D. fell below the commonly accepted standard of care of a family practitioner in the care and treatment which he provided to Caroline Jones. Further, it is my professional opinion that the episiotomy which Linnus Minnick, (sic) M.D. performed upon Caroline Jones was performed in a manner which fell below the commonly accepted standard of care which should have been exercised by a family practitioner and caused damage, including significant scarring, to Caroline Jones.

(R. 155–56).

In *Oelling v. Rao,* the supreme court held that an affidavit stating that the affiant would have treated the patient differently is not sufficient to create a genuine issue of fact on the standard of care issue. 593 N.E.2d 189 (Ind.1992).[2] Here, Dr. Sand's affidavit did not merely state that he would have treated Caroline differently. Rather, Dr. Sand affirmatively stated that, in his professional opinion, Dr. Minick's treatment fell below the applicable standard of care. While Dr. Sand's affidavit is not as thorough as it could be, we find it sufficient to satisfy the Joneses' burden of showing a factual issue for trial. Similar to the affidavits in *Randolph County Hosp.* and *Deery,* the fact that Dr. Sand's affidavit is somewhat lacking in content goes to the weight and credibility to be given the opinion, and not to the admissibility of the affidavit itself.

zation in my opinion. Had the cardiac catheterization not been performed, the complications that actually occurred would not have done so and Mr. Oelling would not have had to have cardiac surgery to correct the complications.

593 N.E.2d at 192 (Dickson, J., dissenting). Notably, this affidavit failed to set forth any standard of care whatsoever. The content of this affidavit is in striking contrast to the affidavit of Dr. Sand. In his affidavit, Dr. Sand sets forth the applicable standard of care and affirmatively states his opinion that Dr. Minick's treatment of Caroline fell below that standard of care.

Dr. Sand's affidavit established a genuine issue of material fact regarding whether Dr. Minick's conduct fell below the applicable standard of care. Dr. Sand's opinion was based on personal knowledge following his examination of the site of Caroline's episiotomy. Dr. Sand's affidavit set forth that he was a family practice physician in the Fort Wayne area, and that he was on the staff of Parkview Memorial Hospital. It is further stated in the affidavit that Dr. Sand's "performance of the episiotomy" fell below the standard of care.

Because we find that a genuine issue of material fact exists with regard to the breach of the standard of care, summary judgment in favor of Dr. Minick is precluded. We therefore reverse the decision of the trial court and remand for trial.

Reversed.

BAILEY, J., concurs.

NAJAM, J., dissents with separate opinion.

NAJAM, Judge, dissenting.

I respectfully dissent. Unlike the majority, I conclude that Dr. Sand's affidavit fails to establish that he is competent in obstetrics. Thus, the affidavit does not create a genuine issue of material fact necessary to preclude summary judgment in favor of Dr. Minick.

When the non-movant presents expert testimony by way of affidavit, that affidavit must meet the requirements of Indiana Trial Rule 56(E). Under T.R. 56(E), affidavits supporting or opposing a summary judgment motion must be made upon the personal knowledge of the affiant, must affirmatively show that the affiant is competent to testify as to the matters covered in the affidavit and must set forth facts which would be admissible in evidence. *Raymundo v. Hammond Clinic Ass'n*, 449 N.E.2d 276, 277 (Ind.1983). The assertion in a summary judgment affidavit of conclusions of law or opinion by one not shown to be qualified to testify to such will not suffice. *Celina Mut. Ins. Co. v. Forister*, 438 N.E.2d 1007, 1011 (Ind.Ct.App.1982). In carrying out the Rule's requirement that supporting or opposing affidavits present ad-

missible evidence, this court has held that such affidavits should follow substantially the same form as though the affiant were giving testimony in court. *Id.*

In addition, in order for expert testimony to be admissible, the proponent of such evidence must establish that (1) the subject matter of the expert's opinion is so distinctly related to a science, profession, or occupation as to be beyond the knowledge of the average lay person; *and* (2) the witness has the sufficient skill, knowledge or experience to assist the trier of fact in its determination. Ind. Evid. Rule 702(a); *See also Stackhouse v. Scanlon*, 576 N.E.2d 635, 639 (Ind.Ct.App. 1991) (plaintiff non-movant must present sufficient foundation for admission of expert opinion), *trans. denied.*

Here, it was incumbent upon the Joneses as the non-movants to establish Dr. Sand's competence by way of affidavit. "A witness' competency is determined by his knowledge of the subject matter generally; his knowledge of the specific subject of inquiry goes to the weight to be accorded his opinion." *Vogler v. Dominguez*, 624 N.E.2d 56, 60 (Ind. Ct.App.1993). The majority holds that in order to qualify as an expert witness, Dr. Sand need only demonstrate his competence in general family practice. However, Dr. Minick argues, and I agree, that before Dr. Sand can express an opinion on the standard of care for family practitioners who perform obstetric procedures, he must first establish both that he maintains a family practice and that his practice includes obstetrics. *See Oelling v. Rao*, 593 N.E.2d 189, 191 (Ind. 1992) (to show genuine issue for trial, plaintiff non-movant is required to present expert testimony that establishes "what other reasonable doctors similarly situated would have done under the circumstances."). In this case, the general subject matter is not family practice, which encompasses a wide range of primary care, but obstetrics, and the specific subject of inquiry is the episiotomy performed by Dr. Minick.

Dr. Sand's affidavit states that he is licensed to practice medicine in Indiana, that he specializes in family practice and that he currently practices at Parkview Hospital in

Fort Wayne, Indiana. He also states that he is "familiar with the standard of care of family practice physicians who practice medicine in the Fort Wayne, Indiana area." That is not enough. While the affidavit establishes Dr. Sand's competence in family practice, it does not establish his competence in obstetrics. Neither does his affidavit state that he is familiar with the standard of care for those family practitioners who also practice obstetrics. In their brief, the Joneses assert that Dr. Sand performs obstetric procedures as part of his family practice. However, Dr. Sand does not make that representation in his affidavit, and no such representation was before the trial court when it made its ruling. Thus, the affidavit fails to demonstrate that Dr. Sand is "similarly situated" to Dr. Minick. *See Id.*

Still, the Joneses argue that the trial court could reasonably infer that a family practice physician's training and education includes obstetrics and, thus, that Dr. Sand would be familiar with such procedures. I cannot agree. We cannot assume that all family practitioners maintain an obstetrics practice. While the affidavit may support an assumption, it does not support the inference that Dr. Sand's family practice qualifies him to testify concerning the standard of care for obstetric procedures. There is a material difference between an assumption and an inference, and an assumption cannot salvage the affidavit. Accordingly, Dr. Sand's affidavit fails to establish that he is competent to render an expert opinion on the medical procedure at issue. The trial court acted properly in disregarding the affidavit. Thus, I would affirm the trial court.