


FILED

Jan 25 2024, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-CT-109

## Penny Korakis,
*Appellant-Plaintiff,*

–v–

## Memorial Hospital of South Bend, Michael R. Messmer, D.O., and David A. Halperin, M.D.,
*Appellees-Defendants.*

---

Argued: June 23, 2023 | Decided: January 25, 2024

Appeal from the St. Joseph Circuit Court
No. 71C01-2106-CT-215
The Honorable John Broden, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-CT-867

---

**Opinion by Justice Massa**

Chief Justice Rush and Justices Slaughter, Goff, and Molter concur.

**Massa, Justice.**

The core issue here is whether Indiana's summary-judgment standard requires a medical expert to expressly state the applicable standard of care in his affidavit. Two of our cases offer two possible answers: *Oelling v. Rao*, 593 N.E.2d 189 (Ind. 1992), says yes, but *Jordan v. Deery*, 609 N.E.2d 1104 (Ind. 1993), says no and suggests the standard of care may be inferred from other content in the affidavit. For three decades, *Oelling* has been cited more often, but we hold that our precedents align more closely with *Jordan*. Today, we retire that part of the *Oelling* rule, which required affidavits to state the standard of care expressly, and embrace *Jordan* instead. Thus, the standard of care may be inferred from an affidavit.

Plaintiff was injured in an automobile accident and treated by two doctors at a hospital. She later sued both doctors, and the hospital, for medical malpractice. The trial court entered summary judgment for all three defendants, and the Court of Appeals, relying on *Oelling*, unanimously affirmed. Today, we summarily affirm the Court of Appeals opinion insofar as it concluded that Dr. Halperin and Memorial Hospital of South Bend are each entitled to summary judgment. *See* Ind. Appellate Rule 58(A)(2); *see also Martin v. Amoco Oil Co.*, 696 N.E.2d 383, 386 n.4 (Ind. 1998) (acknowledging we can "decline to review" portions of an appellate opinion and thus "partially deny transfer" on such issues). But applying a more refined distillation of our precedents to Dr. Messmer, we reach a different outcome and reverse the trial court's decision as it relates to him.

## Facts and Procedural History

On August 3, 2017, Penny Korakis was taken to Memorial Hospital of South Bend ("Hospital") for medical care where she reported pain from her left hand to her left shoulder. She received emergency care and treatment from Dr. David A. Halperin, which included x-rays of her left arm and hand. He also diagnosed her with an acute soft tissue injury.

Korakis returned to the Hospital a week later, where she received treatment from a nurse practitioner who ordered additional x-rays of her left shoulder, elbow, and wrist. The nurse practitioner referred Korakis to

treatment with Dr. Michael R. Messmer, which Korakis received in August and September. Dr. Messmer ordered more x-rays of Korakis's wrist, but did not order a magnetic resonance imaging ("MRI") exam of her left elbow. He also did not order an MRI at a subsequent appointment in September. But he did refer Korakis to physical therapy that same day.

Korakis began physical therapy, but returned to Dr. Messmer in October based on lasting and worsening pain in her left elbow. The next day, a nurse from Dr. Messmer's office called Korakis and told her that she could return to physical therapy, wait two weeks to schedule an MRI, or she could see Dr. John Kelbel. She selected the last option. Dr. Kelbel examined Korakis later in October and noted that the initial x-rays at the Hospital revealed an occult radial fracture in Korakis's left elbow, but the injury had enough time to heal and had likely reached maximum medical improvement. He ordered an MRI of her left elbow along with her right ankle. Korakis returned to Dr. Messmer in November to discuss the results from the MRIs. He explained the results were fine, but after Korakis told him about the possible occult radial fracture in her left elbow, Dr. Messmer reported in his notes that she may have suffered a fracture.

In 2019, Korakis filed a proposed complaint with the Indiana Department of Insurance ("IDOI") against Dr. Halperin, Dr. Messmer, and the Hospital (collectively, "Defendants"), alleging the care and treatment she received from them (including failures to diagnose and treat her) were negligent and fell below the standard of care. Korakis alleged that Dr. Halperin "failed to identify and diagnose the true extent of [her] injuries, which included broken bones." Appellant's App. Vol. 2, p. 47. She claimed that during her follow-up appointments with Dr. Messmer, he "failed to properly examine [her] injuries and the x-rays taken thereof and failed to determine and disclose to [Korakis] the true extent of the injuries that she incurred on August 3, 2017, which included broken bones." *Id.* at 48.

A Medical Review Panel ("MRP") concluded that "[t]he evidence does not support the conclusion that [Defendants] failed to meet the applicable standard of care as charged in the complaint." *Id.* at 53, 56, 59. Later, Korakis filed suit.

Similar to her proposed complaint, Korakis alleged that Defendants had failed to "proper[ly] identify, diagnose, and treat" her injuries,

"including broken bones," resulting in required corrective surgery. *Id.* at 13–14, 20–21. She asserted negligence and negligent infliction of emotional distress that resulted in economic and non-economic damages.

Dr. Halperin moved for summary judgment based on the favorable MRP opinion. Dr. Messmer and the Hospital also moved for summary judgment on that basis.

Korakis responded to both motions. She first argued that Dr. Halperin failed to identify a fracture to Korakis's elbow, "despite it being apparent from the initial x-rays." *Id.* at 117. She next argued that Dr. Messmer failed to identify the fracture "apparent in both x-rays" on August 3 and 10, and his "delay in identifying" her fracture and providing proper treatment "likely worsened" her condition. *Id.* at 146. In each response, Korakis argued that genuine issues of material fact precluded summary judgment.

In support of her arguments, Korakis designated a medical expert affidavit from Dr. James E. Kemmler. He testified to his credentials, including that he "practiced orthopedic medicine for approximately 25 years" and had "extensive experience performing standard of care reviews for personal injury and medical malpractice cases." *Id.* at 121. He also testified about the relevant medical records he reviewed and the chronology of Korakis's treatment:

> 31. Upon review of the relevant x-rays and other medical records, it is my opinion that Ms. Korakis suffered an occult fracture of her left elbow.
>
> 32. This fracture can be observed in the x-rays taken during Ms. Korakis's initial visit to the emergency [room] as well as those taken on August 10, 2017.
>
> 33. The records indicate that Dr. Halperin failed to identify Ms. Korakis's fracture during her initial visit to the emergency room.
>
> 34. The records also indicate that Dr. Messmer failed to order additional x-rays of Ms. Korakis's left elbow when appropriate.
>
> 35. It is my opinion that Dr. Messmer should have done more testing prior to placing Ms. Korakis in a sling and ordering physical therapy.

36. The delay in identifying and providing the appropriate treatment for Ms. Korakis's fracture likely worsened her condition and contributed to her stiffness, limited range of motion, limited recovery, and current condition.

37. Accordingly, it is my opinion that Dr. Messmer [sic] treatment of Ms. Korakis[] fell below the standard of care.

*Id.* at 124.

At the hearing on the summary judgment motions, Dr. Messmer and the Hospital argued that Dr. Kemmler's affidavit could not defeat summary judgment because "nowhere does he state what the appropriate standard of care is[,]" Tr. at 7, and "[a]t best, his affidavit says what he would do, what he thinks is appropriate. But his personal opinion is irrelevant," *id.* at 12. They pointed out that "never does he say that [the] Hospital breached that standard of care." *Id.* at 7.

Dr. Halperin argued that Dr. Kemmler's affidavit was insufficient because Dr. Kemmler, who was an orthopedic specialist, did not state whether he was familiar with the applicable standard of care for an emergency medicine physician in the same or similar circumstances as Dr. Halperin. He also argued that "there is no statement . . . that Dr. Halperin breached the standard of care," and "without that . . . it's insufficient to create a genuine issue of material fact." *Id.* at 15. The trial court granted both summary judgment motions in favor of Defendants.

Following an unsuccessful motion to correct error, Korakis appealed. She argued that Dr. Kemmler's affidavit created a genuine issue of material fact and thus the trial court erred in granting summary judgment. A unanimous Court of Appeals panel rejected this argument and affirmed. *Korakis v. Mem'l Hosp. of S. Bend*, 198 N.E.3d 415 (Ind. Ct. App. 2022), *reh'g denied*. Korakis then sought transfer, which we granted, 208 N.E.3d 1256 (Ind. 2023), thus vacating the appellate opinion, App. R. 58(A).

## Standard of Review

"We review summary judgment decisions de novo," and thus apply "the same standard as the trial court." *Miller v. Patel*, 212 N.E.3d 639, 644

(Ind. 2023). Summary judgment is proper only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Here, we "draw all reasonable inferences in the non-moving party's favor." *Serv. Steel Warehouse Co., L.P. v. U.S. Steel Corp.*, 182 N.E.3d 840, 842 (Ind. 2022).

# Discussion and Decision

Defendants, as summary judgment movants, shouldered the initial burden of establishing the absence of any genuine issue of material fact as to one element of Korakis's medical malpractice claims. *See Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). To set forth a prima facie medical-malpractice claim, a plaintiff must show "(1) that the physician owed a duty to the plaintiff; (2) that the physician breached that duty; and (3) that the breach proximately caused the plaintiff's injuries." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016). A "unanimous opinion of the medical review panel" in favor of the movant is typically enough to satisfy this threshold burden. *Stafford v. Szymanowski*, 31 N.E.3d 959, 961 (Ind. 2015). But the non-movant may oppose such an opinion with expert testimony. *Siner*, 51 N.E.3d at 1188; *see Chi Yun Ho v. Frye*, 880 N.E.2d 1192, 1201 (Ind. 2008) (explaining a plaintiff cannot generally prevail without furnishing "expert opinion that a defendant health care provider's conduct fell below the" standard of care). Thus, under our summary-judgment standard, "expert opinions which conflict on ultimate issues necessarily defeat summary judgment." *Siner*, 51 N.E.3d at 1190.

## I. The applicable standard of care may be inferred.

To begin, we state our amended rule for medical malpractice affidavits in Indiana: the applicable standard of care may be inferred, provided the affidavit contains substantively sufficient information. *See Jordan*, 609 N.E.2d at 1110. But simply inferring the applicable standard of care is not enough under our rule: the affidavit must also include "a statement that the treatment . . . fell below" the standard of care, *Oelling*, 593 N.E.2d at

190, to constitute an opinion that "takes on the character of an evidentiary fact" for summary judgment, *Chi Yun Ho*, 880 N.E.2d at 1201; *see also* T.R. 56(E) (stating a non-movant must "set forth specific facts").

Before we analyze Dr. Kemmler's affidavit, we recap the history of medical malpractice expert affidavits in Indiana. The story properly begins with *Oelling*, where a plurality of this Court established two requirements for expert affidavits opposing summary judgment in medical malpractice actions: an affidavit must (1) "set out the applicable standard of care" and (2) include "a statement that the treatment . . . fell below" the applicable standard. 593 N.E.2d at 190. To be sure, the *Oelling* affidavit fell short of both conditions. It did not "set out any standard at all," nor did it include a statement that the treatment "fell below" the standard. *Id.* at 191. Rather, the expert stated generally that he "would have treated [the patient] differently." *Id.* at 190–91. But that statement was far too amorphous, and so summary judgment was proper. *Id.*

*Oelling* instituted a two-part test for medical expert affidavits. But its first requirement proved to be the most formative in practice. The phrase "set out" suggested the applicable standard of care must be **expressly** identified. In turn, panels latched onto this rule. *See, e.g., Lusk v. Swanson*, 753 N.E.2d 748, 753 (Ind. Ct. App. 2001) (finding pulmonologist's expert affidavit inadequate to preclude summary judgment for an orthopedic surgeon where affiant did not "articulate the requisite standard of care"), *trans. denied*; *Perry v. Driehorst*, 808 N.E.2d 765, 770 (Ind. Ct. App. 2004) (concluding doctor's deposition testimony about a discogram could not bar summary judgment because it did not "establish what the standard of care was"), *trans. denied*. *Oelling* thus produced its own line of cases.

But the story doesn't end with *Oelling*. Soon came a new chapter with *Jordan*, which involved a medical expert's affidavit that, along with a copy of her curriculum vitae, revealed her medical credentials. 609 N.E.2d at 1110. The expert attended medical school in Indiana, was licensed to practice medicine in the state, and practiced medicine in Gary. *Id.* She also stated that "she was familiar with the standard of care at hospitals in South Bend and Plymouth." *Id.* That said, she did **not** expressly state the applicable standard of care. *Id.* In reviewing the contents of the affidavit,

the Court "reluctantly conclude[d]" it was enough "under the facts" in that case to establish a genuine issue of material fact to defeat summary judgment. *Id.* at 1111. The central point of *Jordan* was that the "lack of detail" in a medical expert affidavit went to its "weight and credibility," not its sufficiency for establishing a genuine issue of material fact. *Id.*

*Jordan* stands for the general view that the opinion from a qualified expert in a medical malpractice affidavit is enough to infer the applicable standard of care, provided it has substantively sufficient information. *Id.* at 1110. Thus, an express statement of the standard was not required to defeat summary judgment. Rather, it could be **inferred** based on the content in the affidavit. *See id.* Panels gravitated toward this rule. *See, e.g., Jones v. Minick*, 697 N.E.2d 496, 500 (Ind. Ct. App. 1998) (relying on *Jordan* and its progeny to find a genuine issue of fact about the alleged breach in the standard of care even though the affidavit was "not as thorough as it could be"), *trans. denied*; *Randolph Cnty. Hosp. v. Livingston*, 650 N.E.2d 1215, 1219 (Ind. Ct. App. 1995) (applying *Jordan* to conclude the doctor's "bare assertion that he is familiar with the standard of care of physicians engaged in abdominal surgery" was enough to bar summary judgment), *reh'g denied, trans. denied. Jordan* thus generated its own line of cases.

And this is where the rubber meets the road. No doubt, tension exists between *Oelling* and *Jordan*. The panel here asked for guidance in resolving that tension. *Korakis*, 198 N.E.3d at 422 n.3. Just look at the intensified split from both case progenies. *Compare Lusk*, 753 N.E.2d at 753 (applying *Oelling*), *with Jones*, 697 N.E.2d at 500 (applying *Jordan*). Today, we alleviate that mounting pressure and hold that *Oelling*'s mandate that a medical expert affiant expressly "set out the applicable standard of care" is abrogated. 593 N.E.2d at 190. At the same time, we preserve *Oelling*'s directive that a medical expert affiant must include "a statement that the treatment . . . fell below" the standard of care. *Id.* Thus, the applicable standard of care may be inferred, provided the affidavit contains substantively sufficient information. *See Jordan*, 609 N.E.2d at 1110. The affidavit must also include "a statement that the treatment . . . fell below" the standard of care, *Oelling*, 593 N.E.2d at 190, to reflect "an evidentiary fact" for summary judgment, *Chi Yun Ho*, 880 N.E.2d at 1201.

## II. Dr. Kemmler's affidavit creates a genuine issue of material fact about Dr. Messmer's alleged breach of the applicable standard of care.

Applying our test, we conclude that Dr. Kemmler's affidavit creates a genuine issue of material fact about Dr. Messmer's alleged breach of the standard of care. To begin, there is enough information in his affidavit to infer the applicable standard of care. Two reasons support that conclusion.

**First**, medical credentials. Like *Jordan*, where the expert testified that she had attended medical school, was licensed to practice medicine, and currently practiced medicine, 609 N.E.2d at 1110, Dr. Kemmler, a licensed medical doctor, testified that he "practiced orthopedic medicine for approximately 25 years," Appellant's App. Vol. 2, p. 121. Dr. Kemmler also testified that he had a vast portfolio of experience where he had performed "standard of care reviews" in medical malpractice cases. *Id.* Thus, he was qualified to testify on the medical treatment here.

**Second**, medical judgment. Like *Jordan*, where the expert stated that she reviewed the pertinent medical records, 609 N.E.2d at 1111, Dr. Kemmler reviewed "the relevant x-rays and other medical records," before concluding that "Ms. Korakis suffered an occult fracture of her left elbow," Appellant's App. Vol. 2, p. 124. He added that "[t]his fracture can be observed in the x-rays taken during [her] initial visit to the emergency room as well as those taken on August 10, 2017." *Id.* In light of these facts, Dr. Kemmler reasoned that "[t]he records also indicate that Dr. Messmer **failed to order additional x-rays** of Ms. Korakis's left elbow **when appropriate**."[1] *Id.* (emphasis added). And that it was his "opinion that Dr. Messmer **should have done more testing** prior to placing Ms. Korakis in a sling and ordering physical therapy." *Id.* (emphasis added). Dr. Messmer's failure to do so resulted in a "delay in identifying and providing the appropriate treatment," which "likely worsened her condition and

---

[1] The words "when appropriate," read in context with the rest of Dr. Kemmler's affidavit, allow us to readily infer the standard of care that he concludes was not satisfied.

contributed to her stiffness, limited range of motion, limited recovery, and current condition." *Id.* In sum, Dr. Kemmler put forth a detailed qualified judgment about the care Dr. Messmer provided to Korakis.

For these reasons—the affidavit recites the affiant's credentials and his detailed judgment about this case—we are satisfied that his affidavit contains enough information to enable the court to infer the standard of care without resorting to "undue speculation." *Overshiner v. Hendricks Reg'l Health*, 119 N.E.3d 1124, 1133 (Ind. Ct. App. 2019), *trans. denied*.

Under our test, the affidavit must still contain "a statement that the . . . treatment fell below" the standard of care. *Oelling*, 593 N.E.2d at 190; *see also Jordan*, 609 N.E.2d at 1111 (requiring a "conclusion" that treatment "violated the standard of care"). This opinion functions as an "evidentiary fact" for summary judgment. *Chi Yun Ho*, 880 N.E.2d at 1201. Otherwise, courts must speculate about breach. *See Oelling*, 593 N.E.2d at 190–91 (finding affidavit deficient, in part, because it stated only that the expert "would have treated" patient differently, not that the doctor's treatment "fell below the applicable standard"). Here, Dr. Kemmler concluded: "[I]t is my opinion that Dr. Messmer [sic] treatment of Ms. Korakis[] fell below the standard of care." Appellant's App. Vol. 2, p. 124. Thus, his affidavit passes our test and creates a genuine issue of material fact about Dr. Messmer's alleged breach of the standard of care. *See Jordan*, 609 N.E.2d at 1110; *Oelling*, 593 N.E.2d at 190. Because there is a "conflict of evidence," this issue "must be resolved by a trier of fact." *Siner*, 51 N.E.3d at 1190. We therefore reverse summary judgment entered for Dr. Messmer.

## Conclusion

We thus affirm in part and reverse in part.

Rush, C.J., and Slaughter, Goff, and Molter, JJ., concur.

ATTORNEY FOR APPELLANT PENNY KORAKIS

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES MEMORIAL HOSPITAL OF SOUTH BEND AND DR. MICHAEL R. MESSMER

Robert J. Palmer
David A. Spalding
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE DR. DAVID A. HALPERIN

Jason A. Scheele
Ashley M. Gilbert-Johnson
Rothberg Logan & Warsco LLP
Ft. Wayne, Indiana