Donald D. WALTHER, Joyce D. Walther, Phyllis J. Yeiter, Terry L. Yeiter, Brenda Yeiter, Ronald L. Yeiter and Nancy Jean Yeiter, Appellants–Defendants

and

Lynn M. Miller, Appellant/Intervenor–Defendant,

v.

INDIANA LAWRENCE BANK, Appellee–Plaintiff.

No. 43A05–9103–CV–89.

Court of Appeals of Indiana, Fifth District.

Oct. 15, 1991.

Rehearing Denied Nov. 25, 1991.

Benson, Pantello, Morris & James, M. Robert Benson, Timothy Logan, Fort Wayne, for appellants.

Edward L. Murphy, Jr., Edward J. Liptak, Miller Carson & Boxberger, Fort Wayne, for appellee-plaintiff.

BARTEAU, Judge.

This is an appeal from a grant of summary judgment in favor of the Indiana Lawrence Bank (ILB). Three issues are raised, which we consolidate as one:

Whether the grant of summary judgment was error.

### FACTS

Donald and Joyce Walther owned and farmed several parcels of land in Kosciusko County. In September, 1986, the Indiana Lawrence Bank (ILB) brought a foreclosure action against the Walthers on various promissory notes, mortgages and guarantees. The foreclosure action was stayed by the bankruptcy court when the Walthers filed a Chapter 11 bankruptcy action. The Chapter 11 action was followed by a Chapter 7 action and the Walthers' debts were discharged in bankruptcy on Oct. 2, 1989. The bankruptcy stay was modified on Nov. 15, 1989 and the bankruptcy trust-

ee intervened in the foreclosure action, filing an answer and several counterclaims against ILB. The counterclaims were later amended. The Walthers also filed an amended answer and counterclaims. (The Walthers and the Trustee will hereinafter be jointly referred to as the Walthers.) The trial court granted summary judgment in favor of ILB on the foreclosure and against the Walthers on their counterclaims.

The counterclaims concern a loan from ILB to the Walthers under a program called the Treasurer's Farm Program ("TFP"). In 1985 the State Treasurer's Office instituted the TFP, a program designed to assist farmers in acquiring low interest loans for 1985 crop production. The State provided a fund of $50 million. The essence of the program was that for each qualified loan a bank made to a farmer, the State would deposit matching funds with that bank in the form of a certificate of deposit. Eligibility for the TFP program was stated as follows:

Loans made under this program to support agricultural production are subject to the following limitation or as may be determined by the Treasurer of State:

1. Maximum loan of $50,000 to a single borrower.

2. Funds must be expended for the following:

a. The purchase of seed, feed, fertilizer, chemicals, crop insurance, livestock and production-related energy;

b. Labor;

c. Veterinarian fees.

3. No loan may be made to an officer or director of the financial institution.

The State in no way guaranteed the loan. Rather, the entire risk fell upon the bank, which was obligated to repay the principal and interest on the certificate of deposit to the State at maturity. The purpose of the program was to make funds available to the banks at a low interest rate in exchange for the bank making the funds available to farmers for 1985 crop production at a slightly higher rate.

ILB advised the Walthers of the TFP program and suggested that they could benefit from the reduced interest rate. The Walthers filled out an ILB loan application, which ILB forwarded to the TFP along with a letter addressing the Walthers' qualifications for a loan under the TFP program. The letter stated:

We feel the above-named borrower [Donald W. Walther] will benefit from the Treasurer's Farm Program and will appreciate the interest savings in his operating cost. He does comply with your requirements of having more than 75% of his income from farm operation and has a net worth of less than $250,000. His debt-to-net worth ratio is greater than 1.25.

Moneys borrowed under this program will be used for 1985 operating expense. We accept the data on his financial statement as correct and complete and so state to the best of our knowledge. His interest earned for last year was less than 10% of interest paid, and funds borrowed under this program will not be used for refinancing existing debt.

The loan application of Donald D. Walther conforms to the intent of the Treasurer's Farm Program. The Certificate of Deposit is in no way pledged to the financial institution in event of loan default. [emphasis added]

The letter was signed by the President and CEO of ILB. The TFP approved the Walthers for the program. Upon approval, ILB suggested the Walthers notify their suppliers that the funds would be forthcoming. Relying on ILB's representations, the Walthers committed the loan proceeds to their suppliers in exchange for credit purchase of seed and other necessities for 1985 crop production. When the Walthers were called to ILB to receive the loan proceeds, they were given a deposit slip showing that $50,000.00 had been deposited to their account. At that time they were told they needed to write ILB a check for $50,000.00 to be applied to their pre-existing indebtedness with ILB. Joyce Walther wrote the $50,000.00 check to ILB as requested. Several other farmers were also solicited to apply for a loan under the TFP

program and received essentially the same treatment from ILB.

The essence of the counterclaims is that ILB enticed the Walthers to apply for a loan to help them with their 1985 crop expenses, informed the TFP that the loan would be for operating expenses and would not be used to refinance existing debt, but upon approval by TFP insisted the funds be applied to existing debt. The counterclaims allege a cause of action for breach of the statute enabling the TFP, breach of a third party contract, breach of contract, breach of good faith, breach of a specially incurred duty, fraud, promissory estoppel and RICO violations.[1] Following the filing of the answers, affirmative defenses and counterclaims, and in the midst of discovery, the court entered an order entitled "ORDER STATING ISSUES AS UPON MOTION FOR SUMMARY JUDGMENT" wherein the Court essentially made its own motion for summary judgment and ordered briefing and hearing on the following:

[T]he Court, at this time, cannot identify a legal standard under which the Plaintiff owed a duty to the defendants, Walther for violation of which those defendants incurred damage.

In resolving the question and determining whether or not there did, in fact, exist a duty on the part of the bank to dispurse [sic] the funds to the defendants, Walther for the purpose of cultivating a new crop rather than applying to pre-existing loans, it is necessary to determine:

A. What legal effect or standing did the Treasurer's Farm Program have?

B. What obligation did the plaintiff have as a participant in the Treasurer's Farm Program have to dispurse [sic] loans in accordance with the standards or guidelines established by the office of the Treasurer of the State?

C. What duty did the plaintiff have to the defendants, Walther to dispurse [sic] the funds for the new crop cultivation as opposed to requiring them to apply it to the discharge of pre-existing indebtedness?

ILB subsequently filed its own Motion for Summary Judgment on August 9, 1990 asserting that all of the counterclaims sounded in either conversion or RICO and therefore were not filed within the applicable two year statute of limitations.[2] This motion also stated that "[t]he grounds raised ... are in addition to those which are asserted by the Court's Order Stating Issues as Upon Summary Judgment filed on July 3, 1990."

The parties duly submitted their trial briefs[3] and presented argument to the Court on the issues contained in the Court's "motion for summary judgment" and on the statute of limitations argument raised by ILB. Following argument, the trial court entered summary judgment in favor of ILB. The trial court stated at the time:

I could understand that allegation if at the time of closing of this transaction, you were suddenly faced or given a note to sign and then told to write out a check back and you said, no, that's not our deal but I don't understand this when you sit there and you write the check back and you get the benefit of a 3% interest decrease on your loan. I don't understand that. You had the right to say, no. I

1. At oral argument, ILB contended that all of Walthers' counterclaims were based on the legal transaction between ILB and the TFP, and thus Walthers lacked "standing" to complain about any violation of that contract. Our review of the pleadings filed by Walthers leads us to an opposite conclusion. Only two of the counterclaims raised, breach of the statutory duty to apply the funds to 1985 crop production and third party beneficiary relate to the transaction between ILB and the TFP. The remaining counterclaims concern the transaction between ILB and the Walthers.

2. ILB previously filed a motion for summary judgment on May 2, 1989. This motion, however, was filed during the pendency of the bankruptcy proceeding and therefore predated the filing of any counterclaims.

3. The defendants, Walthers, were required to file the initial brief and the plaintiff, ILB, was delegated to the role of filing a reply brief. This, as well as the court's decision to raise the issue of summary judgment, impermissibly shifted the burdens of production and proof to the defendants.

don't understand how you can assert that there was a misrepresentation when you sit right there and you say, yes. Do you have a response:

Counsel for Walthers explained:

There's no evidence that they said—the bank required them to do that. They didn't have a choice in the matter.

The Court responded:

Did they have an ax over their head. The Court will sustain the Court's motion for summary judgment, the plaintiff's motion for summary judgment.

The written order granting summary judgment contained the following language:

In making that finding the Court finds adversely to those parties upon plaintiff's motion for summary judgment and upon the Court's order stating issues upon summary judgment, and concludes that there is no duty owed by the plaintiff to the defendants, Donald D. Walther and Joyce D. Walther. The Court considers that the Farmer's Farm Loan Program of the State Treasurer seeks to encourage farm production by making deposits to banks under the laws applicable to managing the state monies which deposits then can be used by the banks as reserves against which loans can be made; but that that program creates no obligation upon the part of the bank to a borrower nor any rights on the part of the borrower against the bank, and that if the bank fails to comply with the Farmers Loan Program then it may serve as nothing more than a basis for the State Treasurer to withdraw the funds from the depository. Upon those issues raised by the plaintiff relating to statutes of limitations matters, the Court concurs with the plaintiff in its argument.

## STANDARD OF REVIEW

■ This is an appeal from an entry of summary judgment, and our standard of review in such cases is well-established. When reviewing a summary judgment, the standard on review is the same as it was for the trial court: whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Rogers v. Lewton* (1991), Ind.App., 570 N.E.2d 133, 134. Therefore, we stand in the position of the trial court and consider the same matters. *Campbell v. Porter County Bd. of Comm'rs* (1991), Ind.App., 565 N.E.2d 1164, 1166. In ruling upon a summary judgment motion, the trial court may consider the pleadings, affidavits, depositions, admissions, interrogatories and testimony. *Four Winns, Inc. v. Cincinnati Ins. Co., Inc.* (1984), Ind.App., 471 N.E.2d 1187, 1188, *trans. denied.* Facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits, and admissions. *Cowe by Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630. Any doubt as to the existence of a factual issue should be resolved against a moving party, construing all properly asserted facts and reasonable inferences in favor of the nonmovant. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484, 487, *reh. denied.* Further, the burden of establishing the lack of a material factual issue is on the party moving for summary judgment. *Cowe, supra.* Once the movant has met this burden, an opposing party is obliged to disgorge sufficient evidence to show the existence of a genuine triable issue. *Hinkle v. Niehaus Lumber Co.* (1988), Ind., 525 N.E.2d 1243, 1245.

## SUMMARY JUDGMENT

■ Following a review of the record, we determine that material issues of fact exist which preclude summary judgment. Those factual issues include, but are not limited to, whether ILB solicited the Walthers to apply for the TFP loan, whether ILB represented to the Walthers that they would receive $50,000.00 to use for 1985 crop production, whether ILB told the Walthers to inform their suppliers the funds were forthcoming, whether the Walthers relied on ILB's representations, whether the Walthers consented to application of the funds to pre-existing debt and whether the Walthers suffered a loss. It is

necessary to resolve these factual disputes prior to proceeding to questions of law.

The trial court repeatedly emphasized that it was unable to find any "duty" on the part of ILB and granted summary judgment accordingly. While the question of "duty" is generally reserved for negligence actions, it appears the judge in this context was referring to a "duty" to disburse the funds to the Walthers for 1985 crop production. It was error to reach the issue of ILB's "duty" without first resolving the underlying factual disputes. For example, the Walthers contended that ILB did not disburse the funds but instead mandated that they be applied to existing debt. ILB contended that it disbursed the funds to the Walthers, fulfilling its "duty", and the Walthers voluntarily applied the funds to existing debt, or in other words Walthers consented to the diversion of the funds. This dichotomy is a classic "question of material fact" which arises in relation to each of the counterclaims and precludes summary judgment.

Further, the question of whether participation in the TFP program by ILB created a "duty" to provide the funds to the Walthers for crop production is but one of many legal conclusions which must ultimately be decided, depending on the resolution of the factual issues. If we assume the truth of the Walters allegations (as did the trial court), several questions of law are raised by the counterclaims, such as: whether the Walthers' were a third party beneficiary of the contract between ILB and the TFP; whether ILB breached the contract between itself and the Walthers; whether ILB should be estopped from denying liability; whether ILB was acting as the Walthers' agent; whether a confidential relationship existed due to the long-term banking relationship; whether ILB gratuitously promised to provide the Walthers funds for 1985 crop production; whether a fiduciary duty existed between ILB and the Walthers; whether ILB engaged in actual or constructive fraud; and, whether ILB engaged in corrupt business influence. Presumably, the Walthers would answer each of the foregoing queries in the affirmative and ILB would answer each in the negative, due to different characterizations of the events surrounding the loan and the relationship between the parties. This is why a resolution of the underlying facts is essential prior to proceeding to questions of law.

■ The trial court also noted in the summary judgment order that it concurred with ILB's statute of limitations argument. ILB contended that the corrupt business influence (RICO) violations alleged were barred by the statute of limitations. On appeal, they rely on the case of *Agency Holding Corp. v. Malley–Duff & Associates, Inc.* (1987), 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 which held that a four year statute of limitations applied to federal RICO violations. However, Walthers alleged state, not federal RICO violations, making the federal four year statute of limitations inapplicable. The Indiana RICO provision is silent as to the applicable statute of limitations. ILB additionally cited *Ashland Oil, Inc. v. Arnett* (N.D.Ind.1987), 656 F.Supp. 950, which concluded that a two-year statute of limitations on federal RICO claims asserted in Indiana was appropriate, finding that the violation was closest to Ind.Code 34–1–2–2, forfeiture of penalty given by statute. The *Ashland* court found the case of *Tellis v. United States Fidelity & Guaranty Co.* (7th Cir. 1986), 805 F.2d 741 to be controlling precedent. *Tellis* was subsequently vacated on this point in *Tellis v. United States Fidelity & Guaranty Co.* (1987), 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 755, and remanded for reconsideration in light of *Malley–Duff, supra.* Accordingly, the federal analysis on this point is not beneficial. Indiana has not statutorily nor through case law clearly established a statute of limitations for RICO violations. Therefore, either the stature of limitations for the specific act alleged (i.e. fraud, I.C. 34–1–12–1; breach of contract, I.C. 34–1–2–2) or the general limitation period of ten years, I.C. 34–1–2–3, would apply. As none of these statutes had run at the time the counterclaims were filed, the grant of summary judgment based on the statute of limitations was erroneous.

ILB further argued that the non-RICO counterclaims are nothing more than one claim for conversion, and thus are barred by a two year statute of limitations. The Walthers specifically pleaded numerous causes of action. ILB's argument that they are just disguised conversion claims is not persuasive.

■ Walthers also contested the grant of foreclosure. ILB presented the affidavit of Eric Smith, Executive Vice President and Chief Lending Officer of ILB. His affidavit established that he had personally reviewed the Walthers' accounts, that he had determined the obligations were due and payable immediately, and that $772,-385.47 was the amount due as of May 1, 1989.

Walthers contested the admissibility of Smith's affidavit and the accuracy of his calculations. Upon granting summary judgment, the court requested ILB submit a decree of foreclosure. ILB submitted a decree with an outstanding balance approximately $118,000.00 lower than the balance alleged in the Smith affidavit. ILB asserts that the lower figure was based on the amounts stated in the complaint and that since the discrepancy is in favor of the Walthers, they can claim no error. The outstanding balance alleged varies dramatically and as such evidences that a material issue, namely the true amount due and owing, is still in need of adjudication.

The grant of summary judgment in favor of ILB and against the Walthers on both the foreclosure and the counterclaims was error. Consequently, this case is reversed and remanded.

REVERSED AND REMANDED.

RUCKER and BUCHANAN, JJ., concur.