**Burl JOHNSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9801–CR–37.

Court of Appeals of Indiana.

Sept. 22, 1998.

*Id.* at 179 (emphasis in original).

Ann M. Pfarr, Marion County Public Defender Agency, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, K.C. Norwalk, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Burl Johnson (Johnson), appeals his convictions upon two counts of Criminal Deviate Conduct, as Class B felonies, and one count of Rape, as a Class A felony. He was also determined to be an habitual offender for sentence enhancement purposes.

We affirm.

Upon appeal, Johnson presents seven issues, which we restate as follows:

(1) Whether the trial court erred in permitting a nurse to testify about comments made by the victim after the incident.

(2) Whether the tapes of two 911 telephone calls were improperly admitted.

(3) Whether an expert witness was improperly allowed to answer a hypothetical question.

(4) Whether the trial judge committed prejudicial error by offering rubber gloves to the jury to examine evidence.

(5) Whether sufficient evidence supports the habitual offender determination.

(6) Whether the presentence investigation report violated his due process rights.

(7) Whether the trial court properly considered aggravating and mitigating circumstances.

During the early morning hours of May 11, 1996, B.B. and her sister were unpacking. At approximately 2:30 a.m., Johnson and another man arrived at B.B.'s home. The men departed after a short conversation, but Johnson subsequently returned.

Upon his return, Johnson requested that one of the women accompany him to purchase alcohol. B.B. agreed. After two unsuccessful attempts to make the after-hours purchase, Johnson and B.B. sat in an automobile in an alley near 34th Street and Central. The former then asked the latter if they could have sex. After B.B. refused, Johnson physically attacked her, forcing her to engage in oral, vaginal and anal intercourse.

Thereafter, Johnson told B.B. to exit the vehicle and retrieve her clothing. As B.B. gathered her clothes, Johnson knocked her unconscious. When B.B. awoke, Johnson was hitting her in her right temple. After a brief skirmish, Johnson knocked her out again. Eventually, B.B. escaped, fled from the scene and called 911 from a nearby pay phone. An ambulance arrived while B.B. was still on the phone and transported her to Methodist Hospital.

During trial, the jury convicted Johnson of two counts of Criminal Deviate Conduct and one count of Rape. In addition, the jury determined that Johnson was an habitual offender. As a result, the court sentenced Johnson to a total of ninety years imprisonment, consisting of twenty-year sentences upon each of the three convictions and an habitual offender enhancement of thirty years.

## I. TESTIMONY OF NURSE

Johnson initially contends that the testimony of the hospital nurse who attended B.B. constitutes impermissible hearsay. He argues that the nurse bolstered the victim's

testimony by stating that B.B. spoke with her and asserted that Johnson threatened to kill her if she called the police.

■ Ind. Evid. Rule 803(2) provides that the hearsay rule does not exclude a statement which constitutes an excited utterance. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.* However, "[a] statement made by a rape victim to a nurse in a hospital over an hour after the rape is not *per se* an excited utterance." *Wilson v. State* (1989) Ind.App., 536 N.E.2d 1037, 1043, *trans. denied.*

In the present case, the trial court did not err in admitting the testimony of the nurse. Initially, the nurse merely acknowledged that B.B. spoke with her, which does not constitute hearsay because to this extent the statement was not offered to prove what B.B. said. Ind. Evid. R. 801(c).

■ Furthermore, we conclude that the nurse's testimony regarding B.B.'s assertion that Johnson threatened to kill her if she called the police is an excited utterance. Although this type statement does not *per se* constitute an excited utterance, the facts of this particular case warrant such a determination. According to the nurse:

> "[B.B.] came in by ambulance. And when she arrived, she was naked, she was crying—she did have her shoes and socks on; that's the only clothing she had on—and she was crying and requested to talk to her mother by phone." Record at 220.

Thereafter, "after she was allowed to talk to her mother for a moment . . .," B.B. related to the nurse the details of the attack, including Johnson's threat to kill her if she called the police. Record at 221. Because this testimony evinces that B.B. was still under the stress of the attack, her statement regarding the threat constitutes an excited utterance.

## II. 911 TAPES

Johnson maintains that the trial court improperly admitted two 911 tapes into evidence. During the first recording, a man, who identified himself as Rick Shaun, stated that another man was chasing a woman and had hit her several times. The second recording involved a woman, who identified herself as B.B. and who stated that she had been raped and beaten. (R. Page E Recording).

■ Johnson initially contends that the voices contained on the respective recordings were not properly authenticated. A recording is not admissible unless the voices contained thereon are identified. *See Atkins v. State* (1986) Ind.App., 499 N.E.2d 1180, 1183. However, circumstantial evidence may be utilized for identification purposes. *Id.*

■ With regard to the first recording, Johnson is correct. The State presented no evidence that the voice heard on the tape was that of Rick Shaun, except for the statement made by the caller. Accordingly, the trial court abused its discretion in admitting this recording. However, we conclude that the error is harmless because the recording was cumulative of prior testimony. B.B. previously testified that Johnson chased and hit her.

■ The second recording was properly authenticated. The hysterical caller identified herself as B.B. and stated that she had been raped. The woman remained continuously on the line until medical assistance arrived. Upon arrival, a member of the medical response team confirmed to the 911 operator that they found the victim. Thereafter, the ambulance transported the woman to Methodist Hospital for treatment. Although circumstantial, this evidence is sufficient to support the authentication. *See Young v. State* (1998) Ind., 696 N.E.2d 386, 389 (circumstantial evidence sufficient for authentication where authorities responding to 911 call confirm substantive portions of events heard during call).

■ However, the trial court erred in concluding that this recording did not constitute hearsay because it was not offered to prove the fact of the matter asserted. *See* Ind. Evid. Rule 801(c). If the trial court's reasoning was correct, the recording was not relevant and should not have been admitted. Nonetheless, although the recording is hear-

say, we conclude that it constitutes an excited utterance. *See* Ind. Evid. Rule 803(2). Johnson raped and beat B.B. just minutes prior to this phone call. Accordingly, the admission of this recording does not mandate reversal.

### III. EXPERT WITNESS AND HYPOTHETICAL QUESTION

Johnson contends that the trial court abused its discretion in permitting an expert witness to answer a hypothetical question. Specifically, he argues that it was improper for Shea Hayes Anderson, a forensic serologist, to posit whether it was consistent to not detect seminal fluid on oral swabs taken after the incident if the perpetrator did not ejaculate in her mouth.

■ An expert witness may express his opinion regarding a hypothetical question if the following foundational prerequisites are satisfied: (1) "the expert's ability to give such an opinion must be established through testimony showing he has the requisite knowledge, skill, education or experience on which to base the opinion"; and (2) "there must be a proper evidentiary foundation supporting the facts that are included in the hypothetical question." *Henson v. State* (1989) Ind., 535 N.E.2d 1189, 1191–92.

■ According to Johnson, Anderson was qualified to testify whether specified substances constituted serological matter, but not as to the method by which serological materials have been deposited. We disagree. Anderson testified that her employment as a serologist consists of "the study, identification, and analysis of blood and other biological fluids, which would include seminal fluid staining." Record at 277. Anderson also stated that she has been employed as a forensic serologist by the crime lab for thirteen years. Based upon this background and experience with serological matter, the trial

court could properly conclude that Anderson was qualified to answer the hypothetical. *See State v. Hunter* (1980), 299 N.C. 29, 261 S.E.2d 189, 193–94 (trial court did not err in allowing forensic serologist to opine whether sexual intercourse might have occurred if the jury reached certain specified conclusions).

■ Moreover, we reject Johnson's claim that the second prong of the foundational requirement has not been satisfied.[1] B.B. previously testified that the sex acts began with forced fellatio but that Johnson did not ejaculate in her mouth although subsequently Johnson did ejaculate in her vagina and anus. Accordingly, the trial court did not abuse its discretion in concluding that facts contained in the hypothetical had been introduced into evidence and that the witness could render her opinion in relation to such facts.

### IV. RUBBER GLOVES

■ Johnson argues that the trial court implied that he suffered from a communicable disease by providing the jury with rubber gloves to examine evidence which contained bodily fluids. However, because Johnson made no objection during trial, he may not present this issue for the first time upon appeal. *See Elswick v. State* (1991) Ind.App., 565 N.E.2d 1123, 1127, *trans. denied.*

■ Nonetheless, absent waiver, we fail to reach the same conclusion as Johnson. Whether or not a defendant has a communicable disease, it is not unreasonable to assume that jurors might well be uncomfortable or unwilling to examine, without protection, items which allegedly contain his bodily fluids. Accordingly, we reject Johnson's contention that the provision of rubber gloves gives rise to a prejudicial inference. Moreover, Johnson neglects to consider that the rubber gloves may have been offered to protect the evidence itself.

---

1. Johnson argues in vain that the trial court improperly allowed Anderson to express her opinion about the presence of sperm in certain areas, as such matters were within the common knowledge of the jury. According to Johnson, "[h]ow sperm is deposited is learned in basic sexual education and experience. It does not take an expert to conclude that where one does not ejaculate, one would not expect to find sperm." Appellant's Br. at 28–29. We note the irony in this statement, as Johnson argued in the paragraph immediately preceding that a serologist was not qualified to answer this precise question.

## V. HABITUAL OFFENDER ENHANCEMENT

█ Sufficient evidence supports the habitual offender determination. I.C. 35–50–2–8(d) (Burns Code Ed. Repl.1994) provides that a "person is a habitual offender if the jury ... finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions."

During the second phase of the trial, the State presented evidence that Johnson was previously convicted of two unrelated felonies. First, the State introduced certified copies of the information, abstract of judgment, sentencing hearing minutes and worksheet for Cause No. 49G03–8909–CF–106638 to support its contention that Johnson was convicted of Auto Theft and Battery in 1989. Second, certified copies of the charging information, abstract of judgment and sentencing hearing minutes for Cause No. 49G06–9110–CF–148857 were offered to demonstrate that Johnson was convicted of Rape in 1992. Moreover, the State introduced the arrest report for each respective incident, which contained the fingerprint of the perpetrator. During trial, Officer Knapp testified that both fingerprints were made by Johnson.[2] This evidence is sufficient to support the enhancement.

## VI. PRESENTENCE INVESTIGATION REPORT

█ Johnson alleges that the presentence report violated his constitutional right to receive a sentence predicated upon reliable information. Although we acknowledge that the report appears to be subjectively one-sided, Johnson has waived his argument by failing to object during trial. *See Howard v. State* (1985) Ind., 481 N.E.2d 1315, 1318–19. In fact, Johnson refused to read the report, and his attorney informed the court that he did not believe that it contained any errors.

## VII. SENTENCING

Finally, Johnson argues that the trial court considered improper aggravators and failed to give adequate regard to a mitigating circumstance. We disagree.

The trial court has discretion to impose sentences and will not be reversed unless the sentence is manifestly unreasonable. *Wells v. State* (1990) Ind.App., 555 N.E.2d 1366, 1373, *reh'g denied.* A sentence is manifestly unreasonable if "no reasonable person could find such sentence appropriate to the particular offense and offender for whom such sentence was imposed." *Browning v. State* (1991) Ind.App., 576 N.E.2d 1315, 1319.

█ To facilitate appellate review, the trial court must state its reasoning for enhancing the presumptive sentence or if imposing consecutive sentences. *Morgan v. State* (1996) Ind., 675 N.E.2d 1067. Specifically, the sentencing statement must contain three elements: "(1) it must identify all of the *significant* mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) it must articulate that the court evaluated and balanced the mitigating circumstances to determine if the mitigating circumstances offset the aggravating circumstances." *Scheckel v. State* (1995) Ind., 655 N.E.2d 506, 509.

█ In the present case, Johnson asserts that the trial court improperly enhanced his sentence based upon improper aggravators. First, he argues that the enhancement was premised upon uncharged conduct detailed in the presentence investigation report, which he contends has no indicia of reliability. However, we are not persuaded. The trial court specifically identified Johnson's extensive criminal history as an aggravator warranting the enhancement, noting that he was previously convicted of Auto Theft and Rape. Moreover, the trial court acted within its discretion in considering that Johnson had outstanding warrants in Tennessee for Aggravated Robbery, Especially Aggravated Burglary, Aggravated Rape, and Attempted

---

**2.** Johnson argues that, because Knapp examined the fingerprints for only twenty minutes, his conclusion that Johnson made the prints is suspect. However, this argument goes to the weight afforded the evidence, not its admissibility, and therefore is not a proper matter for appellate review.

First Degree Murder.[3] Because this information necessarily reflected upon Johnson's propensity to commit additional crimes and his character, I.C. 35–38–1–7.1 (Burns Code Ed. Repl.1994) dictates that it receive the attention of the judge.

■ Moreover, we decline to find reversible error with regard to Johnson's argument that the trial court improperly considered his demeanor as an aggravating circumstance. During sentencing, the trial court noted that the 911 call from B.B. was "absolutely gut-wrenching" and that "the only person in the courtroom who wasn't moved by it was Mr. Johnson". Record at 396. The tape recording is indeed of a nature to generate a sympathetic and emotional response from some, if not most, listeners. A different presiding judge, however, may not have necessarily perceived the defendant's response, or lack thereof, to demonstrate conclusively that he lacked any remorse. However, we cannot say that such perception was unjustified. *See Ellis v. State* (1991) Ind., 567 N.E.2d 1142, 1145.

■ Finally, Johnson alleges that the trial court failed to consider adequately his mental state as a mitigating factor. We disagree. The court concluded that Johnson's mental disorder constituted a mitigating factor, but that aggravating factors in the case "far outweigh[ed] it. . . ." Record at 396. This determination was within the discretion of the trial court. *See Aguirre v. State* (1990) Ind., 552 N.E.2d 473, 476.

The judgment is affirmed.

KIRSCH and BAKER, JJ., concur.

---

**3.** The enumerated offenses are crimes as defined under Tennessee statutes, Tenn.Code Ann. (1997 Repl.) §§ 39–13–402, 39–14–404, 39–13–502, and 39–11–117.