Myers BLAKER, Appellant–Plaintiff,

v.

Ronald YOUNG, II, M.D., and India-
napolis Neurosurgical Group,
Appellees–Defendants.

No. 49A02–0811–CV–1038.

Court of Appeals of Indiana.

Aug. 18, 2009.

Rehearing Denied Oct. 26, 2009.

Stephen B. Caplin, Mark W. Sniderman, Safrin Caplin Sniderman, Carmel, IN, Attorneys for Appellant.

Michael E. O'Neill, Jeremy Willett, Schererville, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

Myers Blaker appeals from the trial court's grant of summary judgment in favor of Ronald Young, II, M.D. and Indianapolis Neurosurgical Group (ING) (collectively, Dr. Young) on Blaker's claim for medical malpractice. Blaker presents two issues for review:

1. Did the trial court properly grant summary judgment?

2. Did the trial court abuse its discretion in denying Blaker's request to supplement his designated evidence with evidence relating to the issue of causation?

We affirm.

The designated evidence reveals that Blaker had a history of suboccipital headaches and neck pain. By March 2003, he had been diagnosed with a congenital condition of the brain medically known as a Chiari 1 Malformation. On March 24, 2003, Dr. Young performed a suboccipital craniectomy, C1 laminectomy, and decompression of the posterior fossa and duraplasty on Blaker to relieve the symptoms associated with Blaker's condition. During the operation, Dr. Young applied electrical current to an area of the brain referred to as the cerebellar tonsils.[1] The purpose of applying cauterization to the cerebellar tonsils was to shrink the cerebellar tonsils to alleviate the blockage of spinal fluid and intercranial compression.

In his operative report, Dr. Young dictated his description of the procedure, as performed, in which he noted that after applying cauterization to the cerebellar tonsils, he "was able to see the left tonsillar branch of pica."[2] *Id.* at 54. Dr. Young made no statement regarding the right tonsillar branch of the PICA. Dr. Young further noted that Blaker tolerated the procedure well and was in stable condition when transferred from the operating room. The following morning, Blaker was examined and noted to be awake and alert. Blaker did not exhibit any signs of neurological deficits and was moving all four extremities without difficulty. Later that morning, however, Blaker went into respiratory arrest and required intubation. Blaker could not move his four extremities and began experiencing sensory problems, bowel/bladder problems, and cardiac issues. An MRI showed "a small right tonsillar branch of the PIC [sic] infarct with no edema or no brain stem infarcts."[3] *Id.* at 56. Three years later, on February 10,

---

[1] The surgical use of electrical current is called either "cauterization" or "coagulation." *Appellant's Appendix* at 51.

[2] PICA refers to the posterior inferior cerebellar artery. *Id.* at 114. The PICAs are paired structures that arise from the distal vertebral arteries. One PICA is on the left side of the brain and the other is on the right side of the brain. The anatomy of a PICA may be somewhat variable. The trunk of the PICA supplies everything that the branches supply. The two PICAs supply blood to a portion of the brain stem and cerebellum.

[3] In laymen's terms, an infarct is a stroke. *Id.* at 115.

2006, an MRI of Blaker's brain showed focal atrophic change in the right cerebellar lobe supplied by the PICA. In other words, the MRIs revealed that Blaker had suffered a stroke in that area of the brain supplied by the PICA.

Blaker initiated this medical malpractice action by filing a proposed complaint against Dr. Young with the Indiana Department of Insurance. The matter was presented to a Medical Review Panel (the Panel). On November 13, 2006, the unanimous expert opinion of the Panel was filed, wherein the Panel concluded, "the evidence does not support the conclusion that [Dr. Young] failed to comply with the appropriate standard of care as charged in the complaint." *Id.* at 46. On April 13, 2007, Blaker filed his complaint in the Marion County Superior Court. On March 27, 2008, Dr. Young filed a motion for summary judgment and designated evidence, and Blaker filed his response in opposition to the summary judgment motion, along with his designated evidence, on May 22, 2008. The trial court held a summary judgment hearing on August 25, 2008.

In response to arguments made during the summary judgment hearing, Blaker requested that he be permitted to supplement his designated evidence. Dr. Young objected. Following the hearing, Blaker filed a Request to Supplement Designation of Evidence in Response to Court's Inquiry Relating to Proximate Cause. Dr. Young objected again by filing a motion to strike the supplemental designation of evidence and, in the alternative, a response thereto. On October 23, 2008, the trial court denied Blaker's request to supplement his designated evidence. The trial court also granted summary judgment in favor of Dr. Young. The trial court cited the Panel's opinion that "the evidence does not support the conclusion that [Dr.

Young] failed to comply with the appropriate standard of care . . . ." and concluded that Blaker "failed to designate any admissible expert opinion contradicting the opinion rendered by [the Panel]." *Id.* at 10.

1.

Blaker contends there are genuine issues of material fact that preclude summary judgment. Specifically, Blaker asserts that his designated expert evidence creates a genuine issue of material fact as to whether Dr. Young failed to meet the appropriate standard of care.

Our standard of review for a summary judgment order is well settled. Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Huntington v. Riggs*, 862 N.E.2d 1263 (Ind.Ct.App.2007), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue of material fact for trial. *Id.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.* at 1266.

"On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage." *Id.* We do not reweigh the evidence, and we will liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of materi-

al fact for trial. *Huntington v. Riggs,* 862 N.E.2d 1263.

■ To prevail in a medical malpractice action, the plaintiff must prove three elements: "(1) a duty on the part of the defendant in relation to the plaintiff; (2) failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992). When the defendant doctor moves for summary judgment and can show there is no genuine issue of material fact that the designated evidence establishes that any one of these elements is not met, the defendant is entitled to summary judgment as a matter of law unless the plaintiff can establish, by expert testimony, a genuine issue of material fact for trial. *Hoskins v. Sharp,* 629 N.E.2d 1271 (Ind.Ct.App.1994).

■ In support of his motion for summary judgment, Dr. Young relied upon the opinion of the Panel that there was no evidence he did not meet the appropriate standard of care. In response Blaker submitted the affidavit of an expert witness, Dr. Mitesh Shah, in which Dr. Shah states: "I am of the opinion, *assuming* Dr. Young did not identify the right PICA during the surgery of March 24th, 2003, it is below a reasonable medical standard to not do so." *Appellant's Appendix* at 81 (emphasis supplied). In Dr. Shah's deposition testimony, Dr. Shah stated that "*if* [Dr. Young] failed to identify a major blood vessel during the surgical resection of the cerebellar tonsil, then I think it would be a breach in the standard of care." *Id.* at 59 (emphasis supplied). Dr. Shah stopped short of stating his opinion as to whether Dr. Young breached the standard of care on the facts before him, explaining that the facts he reviewed were insufficient to make that determination.

Blaker also submitted the affidavit of Dr. Joel Boaz, a member of the Medical Review Panel that reviewed the claim submitted by Blaker against Dr. Young. In his affidavit, Dr. Boaz states that at the time of the convening of the panel, the February and December 2006 MRIs were not available and thus, his opinion that Dr. Young met the appropriate standard of care was rendered in absence thereof. Dr. Boaz further states: "I am willing to alter my impression such that *if* the right PICA was not identified and was injured because of that, then that would fall below the standard of care." *Id.* at 83 (emphasis supplied).

In granting summary judgment in favor of Dr. Young, the trial court found that Blaker "failed to designate any admissible expert opinion contradicting the opinion rendered by the Medical Review Panel in this matter." *Id.* at 10. Indeed, the affidavits of Dr. Shah and Dr. Boaz confirm the finding of the Panel, i.e., there is no evidence that Dr. Young did not meet the applicable standard of care unless there is an assumption of fact that is not supported by the designated evidence. Both doctors agreed that, hypothetically, *if* Dr. Young did not identify the right PICA, then he deviated from the standard of care. In his deposition, Dr. Shah even stated the reverse was true:

Q: Doctor, the reverse of what you just answered before these series of objections would be true too, would it not, that assuming Dr. Young did identify the right branches of the PICA during surgery, he would have met the standard of care?

A. Yes.

*Id.* at 66. Clearly, the doctors' opinions on which Blaker relies are based on speculation and conjecture, not the facts established by the designated evidence in this case.

Moreover, there is no evidence in the record to provide a factual basis for the hypothetical situation on which their opinions are based. *See Johnson v. State*, 699 N.E.2d 746 (Ind.Ct.App.1998) (noting that expert witness may express his opinion regarding a hypothetical question if proper foundation laid, including a proper evidentiary foundation supporting the facts that are included in the hypothetical question). The indirect evidence or inferences referred to by Blaker as support for the hypothetical situation were insufficient to convince Blaker's own experts to state a definite opinion that Dr. Young failed to meet the appropriate standard of care. The assumption underlying the hypothetical situation was based on the fact that Dr. Young indicated in his operative report that he viewed the left PICA, but made no mention of the right PICA. Dr. Shah admitted that a doctor is not required to dictate everything about the procedure in the operative report and that it is "certainly a possibility" that Dr. Young identified the right PICA but simply did not include such fact in his operative report. *Appellant's Appendix* at 61. According to Dr. Shah, such omission in the operative report would not have constituted a breach in the standard of care. To the extent Dr. Shah's opinion is based on post-operative MRIs and the symptoms suffered by Blaker following the surgery, again, his opinion is based only on speculation as to what may have occurred during the surgery performed by Dr. Young.

Being based on assumptions and speculation, Dr. Shah's and Dr. Boaz's opinions are insufficient to raise a genuine issue of material fact. On the facts provided, neither doctor stated their expert opinion that based on the facts before them, Dr. Young violated the standard of care. Without expert testimony to refute the Panel's conclusion that there is no evidence Dr. Young did not meet the applicable standard of care, Blaker's claim for medical malpractice cannot succeed. *See Hoskins v. Sharp*, 629 N.E.2d 1271. We therefore conclude the trial court did not err in granting summary judgment in favor of Dr. Young.

2.

■ Blaker argues that the trial court abused its discretion in denying his motion to supplement his designated evidence relating to the issue of proximate cause. The sole issue raised by Dr. Young in the motion for summary judgment was whether Dr. Young failed to meet the applicable standard of care. During the summary judgment hearing, a discussion about causation occurred and Blaker requested that he be permitted to supplement his designated evidence to address the issue of causation. Dr. Young objected, asserting that the trial court had no authority under Ind. Trial Rule 56 to permit a party to supplement its designated evidence after the hearing on the motion. The trial court took the matter under advisement and asked the parties to submit briefs stating their position. On the same day the trial court entered summary judgment in favor of Dr. Young, the trial court denied Blaker's request to supplement his designated evidence with regard to the issue of causation.

We need not address the timeliness issue of Blaker's request or the propriety of the trial court's denial of his motion because Blaker's supplemental evidence was not pertinent to the trial court's grant of summary judgment in favor of Dr. Young. The trial court relied upon the Panel's opinion, which was designated by Dr. Young, and concluded that the expert evidence Blaker originally designated in response thereto failed to refute the Panel's finding that there was no evidence Dr. Young did not meet the appropriate stan-

dard of care. Contrary to Blaker's claim, there is no indication in the trial court's order that the court granted summary judgment because of Blaker's failure to originally designate evidence on causation. Clearly, the court did not base its grant of summary judgment on the issue of proximate cause. Thus, even assuming it was error for the trial court to exclude Blaker's supplemental evidence, Blaker was not harmed thereby. *See Parke County v. Ropak, Inc.*, 526 N.E.2d 732 (Ind.Ct.App. 1988) (concluding any error in exclusion of letter was harmless; although letter could have been used to impeach a witness, the impeachment concerned an issue separate from that on which the plaintiff brought its misrepresentation claim), *trans. denied; Lafary v. Lafary*, 522 N.E.2d 916 (Ind.Ct. App.1988) (holding the erroneous exclusion of evidence establishing the existence of a contract did not cause substantial prejudice, as the determinative issue was not whether a contract existed, but whether the parties would be bound by an agreement if one existed).

Judgment affirmed.

BAKER, C.J., concurs.

RILEY, J., dissenting with separate opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent from the majority's decision to affirm the trial court's grant of summary judgment in favor of Dr. Young and ING. First, we note that in reviewing a grant of summary judgment, facts alleged in a complaint must be taken as true except to the extent that they are negated by depositions, answers to interrogatories, affidavits and admissions. *Walther v. Ind. Lawrence Bank*, 579 N.E.2d 643, 647 (Ind.Ct.App.1991), *reh'g denied, trans. denied.*

The designated evidence indicates that a unanimous Medical Review Panel determined that the evidence did not support the conclusion that Dr. Young failed to meet the applicable standard of care in treating Blaker as charged in the complaint. When a medical review panel renders an opinion in favor of the physician, the plaintiff must then come forward with expert medical testimony to rebut the panel's opinion in order to survive summary judgment. *Bunch v. Tiwari*, 711 N.E.2d 844, 850 (Ind.Ct.App.1999).

In this regard, Blaker designated two affidavits of expert witnesses. Dr. Shah stated, "I am of the opinion, assuming Dr. Young did not identify the right PICA during the surgery of March 24th, 2003, it is below a reasonable medical standard to not do so." (Appellant's App. p. 81). Blaker's second expert, Dr. Boaz, who was also a member of the Medical Review Panel, opined that "I am willing to alter my impression such that if the right PICA was not identified and was injured because of that, then that would fall below the standard of care." (Appellant's App. p. 83). Additionally, Dr. Boaz noted that an injury to the right cerebellum was confirmed by the MRIs for February 10, 2006 and December 19, 2006—MRIs which had not been available to the Medical Review Panel. (Appellant's App. p. 83). In granting summary judgment to Dr. Young, the trial court concluded that these affidavits were not admissible evidence.

Pursuant to Indiana Rule of Evidence 702(a),

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Jordan v. Deery*, 609 N.E.2d 1104, 1110 (Ind.1993), our supreme court noted that an expert opinion in the context of summary judgment proceedings should recite the expert's credentials and the records reviewed and relied upon by the expert. Both experts' affidavits satisfy these *Jordan* requirements.

The majority's opinion now takes issue with the "hypothetical" language included in both affidavits. Both Dr. Shah and Dr. Boaz refer to the conditional statement that *assuming/if* Dr. Young failed to identify the right PICA, then he deviated from the standard of care. The majority characterizes this statement as a "speculation" and, as such, concludes Dr. Shah's and Dr. Boaz's opinions to be insufficient to raise a genuine issue of fact. *See* op. p. 652.

Indiana Rule of Evidence 702(a) does not establish any threshold of certainty, such as "to a reasonable degree of medical certainty," for expert opinion. Certainty is not required. *Biehl v. State*, 738 N.E.2d 337, 338 n. 1 (Ind.Ct.App.2000), *trans. denied; Yang v. Stafford*, 515 N.E.2d 1157, 1161 (Ind.Ct.App.1987), *reh'g denied, trans. denied.* Any lack of detail in an affidavit goes to the weight and credibility to be assigned to it, not whether it is adequate to create a question for the trier of fact. *Jordan*, 609 N.E.2d at 1111.

> In *Bunch*, we evaluated the affidavit of a treating physician who declared that *[I]f* Mr. Bunch was pain-free in his right leg prior to the spinal anesthetic and came out of surgery with immediate pain in his right leg and a dysesthic type of pain, then this pain was likely related to and caused by the spinal puncture or injection of spinal anesthetic.

*Bunch*, 711 N.E.2d at 851 (emphasis added). We found this statement to be admissible and sufficient to refute the medical review panel's opinion, thereby creating a genuine issue of material fact. *Id.* Likewise here, the statement contained in Dr. Shah's and Dr. Boaz's affidavits do not rise to the level of a hypothetical situation and should have been admitted. Specifically, both experts testified it would be substandard care if Dr. Young failed to identify the right PICA. Both statements are derived from a review of all the available evidence—including relevant evidence which was not before the Medical Review Panel—and focus on an uncertainty, incompleteness, and silence in Dr. Young's notes and deposition testimony. In sum, there is no evidence that Dr. Young identified the right PICA; and the inferences from the record, the operative note, the notation of identification of the left PICA and the silence as to the right PICA identification create a genuine issue of material fact as to whether Dr. Young complied with the standard of care. Therefore, I would reverse the trial court and remand for further proceedings.